852 P.2d 1355

**Federico PAZ, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 20393.

Supreme Court of Idaho.

April 16, 1993.

Rehearing Denied May 27, 1993.

Andrew Parnes, Ketchum, Idaho, and Orndorff, Peterson, Hawley, Wight & Gilman, Boise, for appellant. Andrew Parnes argued.

Larry EchoHawk, Atty. Gen., and Lynn E. Thomas, Deputy Atty. Gen., Boise, for respondent.

## OPINION AND ORDER DENYING MOTION TO STAY EXECUTION AND DISMISSING APPEAL

McDEVITT, Chief Justice.

Petitioner, Federico Paz, was convicted of first degree murder and sentenced to death for the murder of Gerry Bright. A petition for post-conviction relief was denied by the district court. Thereafter, Paz appealed his conviction to this Court, which affirmed. *State v. Paz*, 118 Idaho 542, 798 P.2d 1 (1990), *rehearing denied*, September 25, 1990, *cert. denied* —— U.S. ——, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991). A petition for a writ of habeas corpus was filed on behalf of Paz in federal district court on December 11, 1991. In an opinion filed November 20, 1992, the federal district court dismissed the petition without prejudice after concluding that Paz had failed to exhaust all of his state claims. Paz subsequently filed an second amended petition for post-conviction relief in state district court. On March 26, 1993, the district court dismissed the second amended petition for post-conviction relief, finding that the petition was barred under I.C. § 19–2719. Paz filed a motion to stay exe-

cution with this Court on March 26, 1993. Thereafter, this Court ordered the parties to simultaneously file briefs addressing the question of whether there are new grounds for a post-conviction review. Oral argument on the matter was heard on April 12, 1993.

Petitioner alleges the following grounds for relief in his amended second petition:

A. Petitioner was denied the effective assistance of counsel at trial and sentencing on the basis that:

1. Counsel failed to investigate and present mitigating evidence at sentencing.

2. Counsel failed to investigate petitioner's possible mental deficiencies in defense or in mitigation.

3. Counsel failed to investigate petitioner's competency to stand trial.

4. Counsel failed to request a standard jury instruction.

5. Counsel failed to object to prosecutorial misconduct during argument to the jury.

B. Petitioner was denied the effective assistance of counsel on appeal on the basis that:

1. Counsel failed to raise an issue regarding a voluntary intoxication instruction.

2. Counsel failed to raise an issue regarding an imperfect self-defense instruction.

3. Counsel failed to raise an issue regarding an instruction on I.C. § 18–114.

4. Counsel failed to challenge the trial court's reliance on the I.C. § 19–2515(g)(3) aggravating circumstance.

5. Counsel failed to investigate issues regarding ineffective assistance of counsel during trial.

C. Petitioner was denied the effective assistance of counsel in preparation of the post-conviction petition on the basis that independent counsel was not appointed to represent petitioner.

D. Petitioner was denied due process when he was prevented from calling a witness prior to petitioner's testimony at trial and that witness was subsequently threatened and failed to return to court.

E. Petitioner was denied due process when the sentencing court relied on an aggravating circumstance not listed by the prosecution.

F. There was a conflict of interest between petitioner's trial and appellate counsel in violation of the Sixth and Fourteenth Amendments.

G. Petitioner was denied due process in the handling of his original post-conviction petition because petitioner was not mentally competent during the presentation of this petition to the court.

H. Petitioner is suffering from a mental disease such that his execution is barred by the Eighth Amendment.

Idaho Code § 19–2719 requires that in capital cases, post-conviction relief must be requested within 42 days after the judgment is filed. I.C. § 19–2719 also requires that if the petitioner fails to apply for relief within this time limit, the petitioner "shall be deemed to have waived such claims for relief as were known or reasonably should have been known."

In *State v. Rhoades*, 120 Idaho 795, 820 P.2d 665 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992), we interpreted I.C. § 19–2719 as follows:

I.C. § 19–2719 provides a defendant one opportunity to raise all challenges to the conviction and sentence in a petition for post-conviction relief except in those unusual cases where it can be demonstrated that the issues raised were not known and reasonably could not have been known within the time frame allowed by the statute.

120 Idaho at 807, 820 P.2d at 677.

In *Fetterly v. State*, 121 Idaho 417, 825 P.2d 1073 (1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 607, 121 L.Ed.2d 542 (1992), we found petitioner's claim for ineffective assistance of counsel, which was included in his second petition for post-conviction relief, to be waived, stating:

[T]his claim is one "that should be reasonably known immediately upon the completion of the trial and can be raised

in a post-conviction petition." [*State v.*] *Rhoades*, 120 Idaho at 807, 820 P.2d at 677. Because of the petitioner's failure to raise this claim in the first petition, the claim has been waived.

121 Idaho at 419, 825 P.2d at 1075.

▮ I.C. § 19–2719 places a heightened burden on a petitioner which requires a prima facie showing by petitioner that the issues raised were not known and could not reasonably have been known within 42 days of judgment. Upon review of petitioner's claims, we have reviewed the record in *State v. Paz*, as well as the second amended petition for post-conviction relief and supporting documentation, and conclude that petitioner has failed to meet his burden under I.C. § 19–2719.

▮ As to the ineffective assistance of counsel on appeal claims, I.C. § 19–2719, while not foreclosing those claims, implicitly establishes a framework for timeliness. Claims that were not known or could not have reasonably been known within 42 days of judgment must be asserted within a reasonable time after they are known or reasonably could have been known.

▮ Petitioner's brief on his direct appeal following his first petition for post-conviction relief was filed April 25, 1989. The issues raised or not raised by counsel were known at that time. These claims were not asserted until March 11, 1993. The lapse of four years is not a reasonable period of time. Idaho Code § 19–2719(5) requires that we conclude petitioner waived these claims.

The motion to stay is denied and the appeal is dismissed. It is so ordered.

JOHNSON, TROUT and SILAK, JJ., concur.

BISTLINE, Justice dissenting.

It is readily agreed that any claim which is known or reasonably should have been known must be raised in a petitioner's initial petition seeking post-conviction relief. I am unable to agree with the majority's conclusion that Paz "has failed to meet his burden under I.C. § 19–2719" to make "a prima facie showing that the issues raised were not known and could not reasonably have been known within 42 days of judgment." At 760, 852 P.2d at 1357. Common sense compels the opposite conclusion. Accordingly, I must dissent.

Because the Court there reached the merits of the claimed ineffective assistance of counsel, the majority's citation to *State v. Fetterly*, 121 Idaho 417, 825 P.2d 1073 (1991), for the proposition that an ineffective assistance of counsel claim cannot be raised in a second post-conviction petition is utterly unconvincing. The holding in *Fetterly* was that Fetterly's attorney could not have been ineffective for failing to raise a claim under *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989), because *Charboneau* did not apply retroactively to Fetterly. This is made clear when the excerpted quote from *Fetterly* used in the majority's opinion is set out *in full:*

> *Although our holding* [that *Charboneau* is not retroactive] *necessarily disposes of petitioner-appellant's ineffective assistance of counsel claim, we also note that* this claim is one "that should be reasonably known immediately upon the completion of the trial and can be raised in a post-conviction petition." [*State v.*] *Rhoades*, 120 Idaho at 807, 820 P.2d at 677. Because of the petitioner's failure to raise this claim in the petition, the claim has been waived.

(Text omitted by the majority is set forth in italics.) As is obvious from the above quotation, the "holding" of the case was that the ruling in *Charboneau* was not retroactive, so the language relied upon by the majority is *obiter dicta*. Additionally, the *Fetterly* majority's citation to *Rhoades* is taken out of context. A claim of ineffective assistance of counsel was *not* raised by Rhoades. Accordingly, that case does not stand for the proposition for which the *Fetterly* court cited it. Finally, whether a claim should have been raised is obviously a factual matter; we should take the time to analyze the facts surrounding each individual's claim, rather than merely citing a case with different facts that happens to contain the words "ineffective assis-

tance."[1] In short, the majority utterly fails to explain the reason by which Paz could have alleged that his trial counsel, Van Bishop, was ineffective *where Paz was represented by Bishop on both his appeal and his first petition.*[2]

The majority generously acknowledges that Paz could not have argued that his counsel was ineffective on *appeal* in his first petition because the appeal from his conviction and the appeal from the denial of the first petition were consolidated for review. That is, his first petition was decided *before* his direct appeal. However, the majority now creates an heretofore unknown "implicit[ ] ... framework for timeliness." Of course, this framework is nowhere to be found in the actual text of the statute. It appears to this Justice that if the Legislature intended to place an absolute timebar on second petitions, it would have explicitly done so. The Legislature is well familiar with how to create statutes of limitation (for instance, the 42–day time limit for first petitions contained in the very same statute) yet failed to do so for cases of this type. In fabricating the four-year time bar out of thin air, the majority ignores the rule of statutory construction that inclusio unius est exclusio alterius (the inclusion of one thing is the exclusion of the other).

Even if this creatively designed implicit timeliness requirement exists, it has not been violated in this case. In coming up with a four-year figure, the majority erroneously assumes that Paz could have raised an ineffective assistance of counsel claim as soon as his attorney filed Paz's opening brief in that appeal. That is utter nonsense. In order to make out a claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a

defendant must show not only deficient performance by counsel but also prejudice resulting therefrom. Thus, Paz could not state a claim of ineffective assistance of counsel on appeal under the *Strickland* test until he had suffered the prejudice of losing on appeal. Hence, the date from which the majority should set its clock is the date the appeal became final.[3] *Cf. Chicoine v. Bignall,* 122 Idaho 482, 835 P.2d 1293 (1992) (holding that the statute of limitations for an attorney malpractice suit did not begin to run until the client had suffered some actual damage). Paz's appeal was decided on June 13, 1990, and his petition for re-hearing was denied on September 25, 1990. His second petition for post-conviction relief was filed on March 11, 1993. Measuring from either June or September of 1990, this second petition was filed less than three years later. It can hardly be said that this lapse is "unreasonable." Moreover, I.C. § 19–4902, governing non-death penalty post-conviction petitions, provides for a five-year time limit *after the petitioner's direct appeal has been decided,* so it is highly questionable as to whether the legislature would consider the majority's approach to be correct either in calculation or in its determination of reasonableness.

The majority's lack of analysis continues with its failure to explain how Paz could have raised the attorney conflict of interest in his first petition. It makes no mention that Paz alleges his attorney at trial proceedings, then in a post-conviction petition, and finally on appeal failed to disclose such multi-faceted conflict. Paz was left wholly uninformed.

Finally, Paz alleges that his mental health has so deteriorated since the time of his trial that his execution is barred by the Eighth Amendment.[4] Again the majority

---

**1.** The majority's treatment of the ineffective assistance of counsel claims unfortunately confirms Jeremy Bentham's aphorism: "Lawyers are the only persons in whom ignorance of the law is not punished."

**2.** It should be noted that Paz was not free to hire another attorney to represent him on post-conviction matters as he was indigent and nec-

essarily was represented by the public defender or would not be represented.

**3.** This is particularly true in Paz's case, where, it must be reiterated, he had the same counsel at trial, post-conviction proceedings, and on appeal.

**4.** Paz's delusional and incoherent ramblings, which are included in Appendix B attached to

does not explain how that issue could have been known within the forty-two day period after judgment in which petitions are required to be filed. I.C. § 19–2719(3). This situation is especially unfair to Paz, who apparently has no other avenue of raising this claim in the state system other than this petition. A literal reading of I.C. § 19–2719(4) would appear to bar any other proceedings. That statute states that "[a]ny remedy available by post-conviction procedure, habeas corpus or any other provision of state law must be pursued according to the procedures set forth in this section."

I understand the majority's desire to expedite capital case review. When the Court persists in ignoring both facts and law in order to reach that goal, however, it goes too far. The oft-mentioned phrase "death is different" means we tread more meticulously down the path of death penalty appellate review, not less so. In my view, the careless and cavalier manner in which the majority addresses the issues raised here does not speak well of the Court or of justice in Idaho.

### ADDENDUM

Two dedicated Idaho practitioners, namely Andrew Parnes of Ketchum, Idaho, and Charles F. Peterson of the firm Orndorff, Peterson, Hawley, Wright & Gilman, of Boise, have devoted innumerable hours on behalf of the plight attendant to the defendant, Federico Paz.

The Court has just recently had brought to its attention the "Brief re Stay of Execution" which Mr. Parnes and Mr. Peterson prepared on behalf of Mr. Paz. This one justice, after a careful and thorough perusal of said brief, concludes that it is in the public interest that its contents be displayed to the trial bench and bar—and the general public as well—so that all interested persons are made fully aware of how the criminal justice system in Idaho now operates and has been operating since the enactment of Chapter 159, session laws of 1984, made immediately effective on the

this dissent, would seem to evidence a colorable

supposed predicate of an existing emergency.

### APPENDIX A. SECOND AMENDED PETITION FOR POST–CONVICTION RELIEF

IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF CANYON

Federico Paz, Petitioner,

v.

The State of Idaho, Respondent.

Supreme Court No. 20393.

Case No. SP92–01477–C

SECOND AMENDED PETITION FOR POST–CONVICTION RELIEF PURSUANT TO I.C. 19–2719 AND I.C. 19–4901 et seq.

The Petitioner, Federico Paz, in support of his second amended Petition, incorporates by this reference the exhibits and affidavits filed in conjunction with his initial Petition filed in this matter on September 8, 1992 and alleges as follows:

#### I.

I am currently incarcerated on Death Row, Idaho Maximum Security Institution, Boise, Idaho.

#### II.

I was sentenced by the District Court of the Third Judicial District, State of Idaho, County of Canyon, Canyon County Courthouse, 1115 Albany, Caldwell, Idaho.

#### III.

The case number and the offenses for which sentence was imposed are as follows:

(a) Case Number: 87CC02802

(b) Offense Convicted: First Degree Murder and two counts of Aggravated Battery.

Eighth Amendment claim.

### IV.

Sentence was imposed on March 30, 1988 and Petitioner received the following terms of sentence:

On Count I, the imposition of the death penalty in a manner prescribed by law; on Count II, a state prison sentence of ten years determinate and five years indeterminate concurrent to Count I; and on Count III, a state prison sentence of twenty years fixed and ten years indeterminate concurrent to Counts I and II.

### V.

A finding of guilty was made by jury after a plea of not guilty had been entered.

### VI.

Petitioner appealed from the judgment of conviction and the imposition of sentence with the decision of the Idaho Supreme Court reported as *State v. Paz*, 118 Idaho 542, 798 P.2d 1 (1990), rehearing denied, September 25, 1990, cert. denied — U.S. —, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991).

### VII.

The grounds on which Petitioner bases his application for post-conviction relief are as follows:

A. Petitioner was denied the effective assistance of counsel at trial and sentencing as guaranteed by the Sixth Amendment to United States Constitution and the Idaho State Constitution.

*Facts Supporting Claim Petitioner was Denied the Effective Assistance of Counsel*

1. Trial Counsel Failed to Investigate and Present Mitigating Evidence at Sentencing.

Trial counsel was aware that Petitioner had attempted to commit suicide while awaiting trial at the Canyon County Jail and had been seen by a psychologist follow-ing that suicide attempt. (Reporter's Transcript on Appeal, hereinafter referred to as RT, pg. 161) [See also Exhibit A, Copy of Idaho Press Tribune article of December 7, 1987 reporting the suicide attempt of Petitioner, and Exhibit B, Canyon County Sheriff's records reflecting suicide attempt.] In addition, at least one family member told trial counsel that Petitioner had mental and emotional problems and trial counsel stated that he would have Petitioner evaluated for these mental problems. (See affidavit of Gerardo Paz, which is incorporated by this reference.) Trial counsel received a copy of the Presentence Investigation Report which contained prison documents from Oregon which showed that Petitioner had been evaluated in 1982 by a psychologist. Based on these facts, trial counsel was on direct notice that the Petitioner may have been suffering from a mental illness which demanded further investigation and evaluation. Yet, Petitioner was not evaluated by a psychiatrist or psychologist prior to the sentencing hearing. At the hearing, the court noted that no request for psychological evaluation of the Petitioner had been made by trial counsel. (Transcript of Sentencing hearing, hereinafter referred to as RT1, p. 18) Trial counsel acknowledged that no such evaluation had been requested and trial counsel did not ask for a continuance for an evaluation.

The sentencing court relied upon the negative psychological report from 1982 in imposing the death sentence. (Clerk's Transcript on Appeal, hereinafter referred to as CT, p. 446–447.) Trial counsel did not attempt to contact the writer of that report nor counter the conclusions of that report with an updated psychological evaluation.

Trial counsel failed to talk with family members to investigate the psychological background of the Petitioner. (See affidavits of Gerardo Paz, Florentino Paz, Jesse Paz, Frank Paz, Patrick Paz, Adrian Paz and Maria Paz, which have been filed with the court and are hereby incorporated by this reference.) Had he done so, he would have found that Petitioner exhibited increasingly strange behavior suggesting

serious mental problems. Petitioner had often heard voices since he was a little child; as an adult and after his return to Idaho in 1982, his symptoms increased and he complained of being followed by demons. Petitioner told his mother and other family members that the demons and voices were speaking to him from radios and television sets which were turned off. These fears became so great that Petitioner's mother had two local Catholic priests come to the house to bless the home with holy water in hopes of calming Petitioner's fears of being tormented by these demons. (See affidavits of Adrian Paz, Maria Paz and Father Raoul Covarrubias, which are filed with the court and are hereby incorporated by this reference.)

Since Petitioner's incarceration at the Idaho Maximum Security Institute, he has been under the observation of trained psychologists and psychiatrists. The doctors at IMSI have diagnosed the Petitioner as a paranoid schizophrenic and indicate that there is a strong likelihood that an evaluation prior to trial might well have elicited this same diagnosis. (See affidavits of Michael Estess, Craig W. Beaver and Virgil Sterling, which are filed with the court and are hereby incorporated by this reference.) In addition, while at IMSI, Petitioner again attempted suicide. Petitioner has accepted medication from the doctors at IMSI and has responded favorably to that medication.

One of the main reasons for imposing the death sentence was the protection of society including other prisoners. (CT 458) The court was presented no evidence of Petitioner's mental condition and the possibility that medication would control the mental illness and reduce the possibility of any threat to others by the Petitioner.

In addition, trial counsel did not present any mitigating evidence concerning the Petitioner's behavior during his prior incarcerations. Petitioner was incarcerated for one year in the Lane County Jail awaiting trial in Oregon in 1977–1978. Trial counsel did not contact Petitioner's prior counsel to determine the Petitioner's behavior while incarcerated in Lane County. Had he done so, trial counsel would have determined that there were no behavioral problems. (See affidavit of Donald Diment, which is filed with the court and is hereby incorporated by this reference.) Prior counsel would also have supplied trial counsel with additional background information regarding the extraordinary support of Petitioner's family during his incarceration in Oregon. Family members made several trips to Oregon from Notus at great time and expense to support the Petitioner. Prior counsel would also have shown that under the Oregon sentencing scheme in effect at the time of this prior conviction, Petitioner received the standard sentence for manslaughter under the matrix system. The lengthy twenty year term would have no effect on the length of the actual incarceration which was set by the matrix at between four and five years.

Trial counsel made no attempt to obtain the records or interview any witnesses regarding Petitioner's prior incarceration in the Oregon State prison system. At least one counselor from Oregon has stated that Petitioner was not a behavioral problem while incarcerated. (See affidavit of Craig Johnson, which is filed with the court and is hereby incorporated by this reference.) This evidence would have affirmatively countered the conclusion of the sentencing judge that Petitioner would be a risk to other prisoners should he be given a life sentence.

Trial counsel failed to prepare for the sentencing by failing to interview potential witness who had made statements in the pre-sentence report. (See affidavit of Robert V. Lindsey, which is filed with the court and is incorporated by this reference.) Trial counsel also failed to subpoena witnesses to the sentencing hearing. (RT1 19, 29) In addition, trial counsel failed to prepare legal arguments regarding the admissibility of evidence at the sentencing hearing. (RT1 45–46)

Trial counsel was aware that Petitioner had been drinking heavily the night of the incident; had a number of convictions for driving under the influence and had been involved in outpatient alcohol counseling while on parole and probation. Counsel did not investigate the effects of alcohol as mitigating evidence to present at sentencing nor did he investigate the connection between alcoholism and mental illness. (See affidavit of Craig Beaver, which is hereby incorporated by this reference.)

Trial counsel failed to challenge the lack of notice regarding the aggravating circumstances relied upon by the sentencing judge. The prosecutor listed four aggravating circumstances in his Notice of Intent to Seek Death Penalty. (CT 404) The sentencing judge found that two of these aggravating circumstances were not supported by the evidence; however, the judge also found the existence of one aggravating circumstance which had not been noticed by the prosecution. A timely objection to this aggravating circumstance would have resulted in the setting aside of this factor in the penalty determination.

2. Counsel Failed to Investigate Mental Defenses to the Crimes Charged.

Trial counsel failed to investigate any mental defenses which Petitioner may have had. The facts alleged above in Paragraph VII.A.1. are hereby incorporated by this reference as if fully set out herein. Trial counsel, while aware of the Petitioner's suicide attempt and the possibility of his suffering from a mental disease, made no attempt to have the mental issues in the case investigated by engaging a psychiatrist or psychologist to examine the Petitioner prior to trial.

An examination of the Petitioner would have revealed that the Petitioner was suffering from a mental disease, specifically paranoid schizophrenia, which may have resulted in convictions on reduced charges had that evidence been presented to the jury.

Under Idaho Code section 18–207(c), Petitioner could have introduced "expert evidence on the issues of mens rea and any state of mind which is an element of the offense ..." Expert psychiatric testimony on Petitioner's condition would have further supported the instruction on imperfect self-defense and would have reduced the charge to manslaughter or second degree murder from first degree murder thus avoiding the imposition of the death sentence.

3. Trial Counsel failed to investigate the issue of Petitioner's competency to stand trial and be sentenced.

Based on the knowledge of the Petitioner's mental status and his suicide attempt, trial counsel should have fully investigated with the assistance of mental health experts the question of Petitioner's competence to stand trial and assist in his defense both at trial and at sentencing.

4. Other instances of Ineffective Assistance of Counsel.

a. Trial counsel failed to request a standard jury instruction approved by the Idaho Supreme Court on reasonable doubt. The Idaho Supreme Court has approved the giving of one reasonable doubt instruction over all others. Despite this, the trial court gave a modified instruction suggested by the Ninth Circuit Pattern Instructions. Recently even the Ninth Circuit has rejected the version of the instruction given in this case. This instruction as read to the jury was in error because it reduced the burden on the prosecution and violated Petitioner's rights under the due process clause of the federal constitution and the Idaho constitution.

b. Trial counsel failed to object to prosecutorial misconduct during argument to the jury. The prosecutor had requested an instruction on malice which permitted the jury to infer malice from the use of deadly weapon. The court rejected this instruction; however, the prosecutor ignored the court's ruling and argued this to the jury.

Without objection by defense counsel, the prosecutor stated "One can infer malice by the use of that deadly weapon.... When you come in there and use the weapon to kill another person, malice is implied...." (RT 774) and "And when you use a deadly weapon, you intentionally kill someone." (RT 780)

## B. Counsel Failed to Effectively Represent the Petitioner on Appeal.

Counsel failed to provide effective assistance of counsel on direct appeal as guaranteed by the Sixth Amendment to the United States Constitution and Article I section 13 of the Idaho State Constitution.

### Facts Supporting Claim that Petitioner Was Denied Effective Representation on Appeal

Appointed trial counsel for Petitioner also represented Petitioner on his direct appeal and post-conviction proceedings in the state courts. Counsel without reason failed to raise numerous issues on appeal which had been properly preserved at the trial court level. Counsel presented numerous instructions to the trial court which were rejected. On appeal, none of these issues were raised although each forms the basis for reversal of the Petitioner's conviction.

1. Instruction re voluntary intoxication. Under Idaho Code section 18–116, voluntary intoxication while not a full defense to the charge can negate the presence of the specific intent required for a conviction of first degree murder. Trial counsel brought out the fact that Petitioner had been drinking extensively the night of the incident. In addition, one police officer testified that several hours after the incident Petitioner still had a strong smell of alcohol on his breath. That officer wanted Petitioner to take a breath test because of the odor of alcohol but Petitioner refused such a test. There was sufficient evidence to support the giving of this instruction; however, the trial court refused the instruction on the grounds that it was covered by other instructions. (CT 353) There was no other instruction covering the effect of voluntary intoxication as defined by the statute and failure to give the instruction was error and would require reversal of the conviction if raised on appeal.

2. Imperfect self-defense. The law in Idaho allows for instruction on the reduction of a murder charge to manslaughter based on an imperfect self-defense theory. Trial counsel presented a self-defense argument and requested the trial court to instruct on imperfect self-defense to permit a reduction of the charge from murder to manslaughter. (CT 348) The court denied the request and instructed only in the language of Idaho Code section 18–4006, which defines manslaughter in general terms but does not cover imperfect self-defense. The facts here support the giving of an imperfect self-defense instruction. Petitioner testified that he saw the victim with a gun tucked in his pants when the victim returned to the cafe after their verbal argument. Petitioner also was aware that the victim carried a gun. When Petitioner approached the table where the victim was seated, Petitioner saw the victim's hands move for the back of his shirt where Petitioner had seen the weapon. At that point the Petitioner shot the victim. The police found the victim's gun about eight inches from his hand and not tucked into his shirt where it had been when he was seated. Thus, the facts support the conclusion that Petitioner may have had an honest but unreasonable belief that his life was threatened; such facts would reduce the charge from murder and void the death sentence. Yet, trial counsel for no reason simply did not raise this issue on appeal despite his preparation of that instruction in the trial court.

3. Union of Act and Intent. Idaho Code section 18–114 requires that there be the union of act and intent to find a person guilty of the offense charged. The court refused to provide any instruction reflecting the statutory language despite its reliance on the statutes for the granting of

other instructions. Appellate counsel failed to raise this issue.

4. Appellate counsel failed to challenge the death sentence as a violation of due process under the United States and Idaho Constitutions. The sentencing judge found the existence of an aggravating circumstance under Idaho Code section 19–2915(g)(3), that the defendant knowingly created a great risk of death to many persons. The prosecutor had not noticed this factor in his moving papers of intent to seek the death penalty and did not argue this factor at the time of sentencing. It was a violation of due process to rely on this factor; had counsel raised this issue on appeal, Petitioner would have been entitled to resentencing.

5. Appellate counsel failed to investigate and examine issues regarding the ineffective assistance of counsel during trial. Appellate counsel was the same attorney who represented Petitioner at trial; therefore, there existed a potential conflict for the same attorney to represent Petitioner on appeal. Counsel did not seek an independent attorney to review the file and transcripts to determine if new counsel was necessary to avoid this conflict. Several bases for raising the ineffectiveness of trial counsel appear from the transcripts themselves and could have been raised on direct appeal.

C. Ineffective Assistance in Preparation of the Post–Conviction Petition in Violation of the Idaho Constitution, Idaho Code section 19–4006 and the Fourteenth Amendment to the United States Constitution.

*Facts Supporting Claim of Ineffective Assistance During the Post–Conviction Petition*

Trial counsel prepared a post-conviction petition for the Petitioner. The petition however did not comply with the requirements for Petitions set out in the statutes. The petition was neither verified nor signed by the Petitioner. Petitioner did not even know that such a Petition was being filed on his behalf and it was never discussed with trial counsel. (See affidavit of Petitioner, which is incorporated by this reference.) When notified by the court of its intent to dismiss the Petition and the grounds for that dismissal, counsel took no action to amend the petition and simply allowed the court to dismiss the petition.

Numerous issues regarding the effective assistance of trial counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I section 13 of the Idaho Constitution existed had an independent counsel be appointed to represent the Petitioner. Instead, the court appointed the trial attorney who is not in a position to analyze his own performance at trial and therefore an inherent conflict of interest existed between Petitioner and counsel which mandated that trial counsel seek to remove himself from the post-conviction proceedings.

No notice of appeal was filed from the denial of the petition; however, the Idaho Supreme Court consolidated the post conviction remedy with the direct appeal and affirmed, citing only the issue of the forty-two day rule of I.C. section 19–2917. In fact, the appellate record before the Supreme Court contains no reference to the post-conviction proceeding. (See affidavit of Andrew Parnes, which is filed with the court and is incorporated by this reference.)

D. Petitioner was Denied his Right to Due Process under the Federal Constitution and the Idaho Constitution when He was Prevented from Calling a Witness Prior to Petitioner's Testimony and that Witness was Subsequently Threatened and Failed to Return to Court.

*Facts supporting the claim that Petitioner was denied his due process rights*

At trial Petitioner presented the testimony of Darren Healy regarding the confrontive nature of Gerry Bright, the victim in

this case. During the examination of this witness, trial counsel inquired if this witness knew that Bright had a reputation for carrying a gun. The court prevented that question ruling that it would only be admissible after Petitioner testified. Healy's testimony was then interrupted and Petitioner testified. Trial counsel then sought to call Healy but he had left the courthouse after being threatened by relatives of the victim. A continuance to find Healy was denied by the court.

E. Petitioner was denied the Due Process of Law as Guaranteed by the Fourteenth Amendment to the United States Constitution when the Sentencing Court Relied on an Aggravating Circumstance not Noticed by the Prosecution.

Petitioner was denied his right to due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States when the sentencing court relied upon an aggravating circumstance which had not been noticed by the prosecutor when he sought the death sentence.

### Facts Supporting the Claim that Petitioner was Denied the Due Process of Law

The prosecutor filed prior to the sentencing hearing a notice of intent to seek the death penalty. That pleading listed several aggravating circumstance upon which the prosecutor relied for the imposition of the death sentence under Idaho law. The prosecutor did not list as an aggravating circumstance the risk of harm to others under Idaho Code section 19–2515(g)(3).

After the sentencing hearing, the court issued its findings and found that this risk of harm factor was proven beyond a reasonable doubt even though it had not been relied upon by the prosecution in its notice or at the hearing. Petitioner had not been given any notice that this would be the basis for the imposition of the death sentence; reliance on this aggravating circumstance thus violated his right to due process of law.

F. Trial and Appellate Counsel had an Absolute Conflict of Interest which Requires Reversal of the Conviction under the Sixth and Fourteenth Amendments to the Federal Constitution.

### Facts Supporting Claim of Conflict of Interest

Trial counsel has the "public defender" contract with Canyon County. As part of this contract, counsel is responsible for the staffing of his office which provides representation for all indigent criminal defendants in Canyon County. Counsel employs on a part time basis for the purpose of research and writing an attorney, Fred Grant, who is not licensed to practice in the State of Idaho. This person had primary responsibility for the preparation of the appeal in this matter as well as assisting counsel in the preparation for trial.

In addition to his work for counsel, Mr. Grant provides research and writing for other attorneys in Canyon County including the Office of the Prosecuting Attorney. Thus, Mr. Grant was also receiving funds from the Prosecuting Attorney for his work for that office. (See Exhibit C, a copy of claims by Fred Grant for work done on behalf of Canyon County Prosecutor's Office, and Exhibit D, an article from the Idaho Press Tribune regarding county funds paid to Fred Grant.)

The fact of this dual work creates a direct conflict of interest regarding the representation of Petitioner. Defense counsel owe an absolute allegiance to their client which is inconsistent with employment with the Prosecuting agency during the pendency of the representation of a criminal defendant.

Mr. Grant met with Petitioner but at no time was Petitioner advised by his attorney Van Bishop or Mr. Grant that Mr. Grant worked for the Prosecutor. Petitioner was never asked to and did not waive any con-

flict regarding the employment of Mr. Grant.

The fact that the appeal did not raise several issues which could have resulted in outright reversal demonstrates that the allegiance of this attorney may well have been split between his two employers—the prosecution and the defense. One need only ask if Grant would be able to find continued employment with the prosecutor if he were successful in Petitioner's appeal.

G. Petitioner was denied the due process of law under the Idaho Constitution and the Fourteenth Amendment to the United States Constitution in the handling of his original Post–Conviction Petition because Petitioner was not mentally competent during the presentation of this Petition to the court.

*Facts supporting this claim of a violation of Due Process*

Petitioner hereby incorporates the allegations contained in his claim VII.A above regarding his mental status. Because of his mental condition, Petitioner was not able to understand the nature of the post-conviction proceedings and thus was not competent to waive any rights during that proceeding.

H. Petitioner is suffering from a mental disease such that his execution is barred by the Eighth Amendment to the United States Constitution.

The Petitioner is suffering from such mental disease and defect that his execution is barred by the Eighth Amendment to the Constitution of the United States.

*Facts Supporting Petitioner's Claim He is Suffering from a Mental Condition Barring his Execution*

Petitioner has for many years exhibited signs of delusional behavior and is suffer-ing from long term mental illness such that he is not competent to be executed. While in the Canyon County Jail awaiting trial, the Petitioner attempted to commit suicide. Dr. Michael Estess, the psychiatrist for the Idaho State Penitentiary, has examined the Petitioner and believes that he is suffering from severe mental illness.

During the appellate process, the Petitioner at one point moved the court without the concurrence of his then counsel, Van Bishop, to dismiss his appeal. This request was eventually withdrawn. As a result of this request for dismissal both his counsel and the representative of the state, Lynn Thomas, moved for a mental examination of the Petitioner.

The affidavits filed in conjunction with the Petition in this matter demonstrate that Petitioner is suffering from paranoid schizophrenia with a fixed delusional system. His disease is such that he is not competent to be executed by the state.

Attached as an exhibit to this Petition is a copy of a pleading filed in pro per by Petitioner in Ada County Case No. HC 3402 alleging claims against the Idaho Maximum Security Institution and naming a number of defendants including Jerry Bright, for whose death Petitioner has been convicted. This claim reflects the serious delusional behavior of the Petitioner such that he is not mentally competent to be executed.

VIII.

None of the above claims were known by Petitioner nor could or should have been known at the time the first post conviction petition was filed. Petitioner did not even know that any such petition was being filed and Petitioner did not sign any petition for post conviction relief. As regards the issues of ineffective assistance of counsel at trial, Petitioner was unaware of the lack of investigation conducted by trial counsel. Trial counsel met with Petitioner infrequently prior to trial and did not discuss the types of mitigating evidence that could

be presented at the trial or sentencing hearing. Counsel did not discuss with Petitioner the contents of the post conviction petition before filing it.

Petitioner attended public schools until the eighth grade and then completed a GED while incarcerated in the Oregon Prison system. Upon his release from prison in 1982, Petitioner worked primarily seasonal jobs at the Crookham Company and obtained no additional education beyond his GED.

At the time of the filing of the initial post-conviction petition the Petitioner was suffering from a mental disease such that he could not understand the process of such a petition and thus was not competent to waive the raising of any issues in that initial petition.

Petitioner with the assistance of current counsel has attempted to provide the court with affidavits supporting his claims in this petition. Neither the federal nor state court has yet appointed a psychologist or psychiatrist to examine Petitioner and the doctors from IMSI are not willing to provide more detailed reports on Petitioner's psychological makeup. Petitioner's counsel have contacted a psychologist who is prepared to accept appointment by this court to examine the Petitioner. Petitioner's counsel have attempted to locate several witnesses including Darren Healy but have been unable to locate him at this time. Once he is located, his affidavit will be attached to the petition.

Petitioner relied upon his appointed counsel to raise all issues on his appeal. Petitioner did not meet with counsel after the sentencing in this matter and did not discuss the preparation of the briefs with counsel. Because of the timing of the post conviction proceeding and the lack of communication from trial counsel, Petitioner could not have known that counsel would not raise certain issues during the appellate process. Petitioner is not versed in legal issues and without the assistance of counsel could not review the trial record to determine if the trial contained legal errors.

IX.

Prior to this amended Petition, Petitioner has filed the following with respect to his conviction and sentence in addition to the direct appeal:

(a) A Petition for Post Conviction Relief was filed by my attorney without my knowledge on May 11, 1988, in the District Court, Canyon County.

(b) A Petition for Writ of Habeas Corpus was filed in the United States Federal District Court, District of Idaho, in Case Number 91–0469–S–HLR. Said Petition has been dismissed without prejudice to exhaust state remedies.

(c) A Petition for Post–Conviction Relief in the above-entitled matter and an Amended Petition to which this second amended Petition relates.

X.

Petitioner has been granted leave to proceed in forma pauperis, and is requesting the proceeding to be at county expense. Petitioner also requests the appointment of experts and investigators to assist me in developing this application and presenting the matter before this court. I have been incarcerated since my arrest in 1987 and have no assets, income or resources with which to hire an attorney. I have been represented by appointed counsel at each stage of the proceedings to date.

XI.

Petitioner specifically seeks reversal of his convictions on Counts I, II and III and

reversal of the sentence of death imposed on Count I.

## XII.

This Petition incorporates by this reference the affidavits and exhibits filed in support of the Petition filed by Petitioner on September 8, 1992.

## XIII.

Petitioner files this Petition pursuant to Idaho Code section 19–2719 and Idaho Code section 19–4901 et seq.

WHEREFORE, Petitioner prays for the following relief:

1. That the Judgment of Conviction and death sentence entered in the case of State v. Federico Paz, Canyon County Case No. 87–CC02802, entered on March 30, 1988 be reversed;

2. That the court provide funds to hire experts and an investigator to assist Petitioner;

4. That the Court allow a period of thirty days to amend the Petition and file additional affidavits in support of the petition;

5. For such other relief as the Court deems just and proper. Dated this 11 day of March, 1993.

    (s) Federico Paz
    FEDERICO PAZ

STATE OF IDAHO

County of Ada

I, Federico Paz, being duly sworn upon oath, depose and say that I have subscribed to the foregoing Petition; that I know the contents thereof; and that the matters and allegations therein set forth are true and correct to the best of my knowledge and belief.

    (s) Federico Paz
    FEDERICO PAZ

SUBSCRIBED and SWORN to before me this 11 day of March, 1993.

    (s) Shannan Ahrens
    Notary Public for Idaho
    Residing at Boise, Idaho
    Commission Expires: 10–9–97

APPENDIX B. DISTRICT COURT MEMORANDUM DECISION AND ORDER AND A PRO SE PLEADING WHICH APPEARS TO BE A SECOND PETITION FOR POST–CONVICTION RELIEF

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

Federico Paz, Petitioner,

vs.

State of Idaho, et al, Respondents.

Case No. HC–3402

MEMORANDUM DECISION AND ORDER

Filed Nov. 5, 1992

This court has received and reviewed what appears to be a Petition for Writ of Habeas Corpus. This "submission" to the court is completely unintelligible and fails to state and recognizable constitutional claim. It is no more than a rambling description of a series of alleged events, some of which occurred several years ago. The Petition names approximately twenty respondents in its caption. It contains no conclusions about the relief sought or the manner in which these named parties have in someway, affected the Petitioner's legal rights.

I find this "Petition" fails to state any understandable constitutional claim in its present form and decline to issue a writ of habeas corpus. This Petition is hereby dismissed.

It is so ORDERED this 2nd day of November, 1992.

    (s) Michael Dennard
    MICHAEL DENNARD
    Magistrate

APPENDIX B. DISTRICT COURT MEMORANDUM DECISION AND ORDER AND A PRO SE PLEADING WHICH APPEARS TO BE A SECOND PETITION FOR POST–CONVICTION RELIEF—Continued

FEDERICO PAZ

26915

Box 51

Boise, Idaho 83707

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR ADA COUNTY

Case No. _____

FEDERICO PAZ, Plaintiff,

vs.

STATE OF IDAHO,

Idaho Maximum Security Institution

WARDEN ARVON ARAVE

DEPUTY WARDEN DEBRAH SHIELDS

DEPUTY WARDEN REDOM,SECURITY

DEPUTY WARDEN KLAUSER,OPPERATIONS

CANYON COUNTY SHERIFF

DEPUTY DEE NORRIS

DEPUTY SANTOS GARZA

DRUG ENFORCEMENT AGENT

DONALD PEGRAM

IDAHO STATE POLICE

Lt.JERRY BRIGHT

CALL SGT.YORK

IDAHO STATE CORRECTIONAL

INSTITUTION etal, Defendents.

CRUEL AND UNUSUAL PUNISHMENT

PARTIES

a.Dee Defendant:Dee Norries

Occupation:Crookham Company,Caldwell,Idaho.

b.Defendant:Santos Garza

Occupation:Crookham Company,Caldwell,Idaho.

c.Defendant:Donald Pegram

Occupation:Crokkham Company,Caldwell,Idaho.

d.Defendant:Jerry Bright call Sgt.York.

Occupation:Idaho State Police.Nampa resident.

1:To cancel agreements that I am to be persecuted.

2:To cancel agreements that I can be taken outside of the institution.

3:To cancel agreements that anyone can come in to my cell or into the institution to harass or persecute me.

4:To cancel agreements that anyone outside of the institution staff can censor my mail.

5:To cancel agreements that state I give power to attorney to.

6To cancel agreements that anyone outside of the institution staff can put me to death.

7:To cancel agreements stating that I give my life to Santos Garza or to anyone calling him orherself Martyr.

8:Cancel agreements that Santos Garza,Dee Norris,Donald Pegram,Terrance Leroy Pegram,Lt. Jerry Bright call Sgt. York,Chuck Tate,Patsy Maxwell Campos,Mary,or Carla,Roy Anthony,or Francisco Gomez can cater or barter me,or sell me protection.

9:Cancel agreements stating that I will live according to prominent Jew rules.

10:Cancel agreements stating that I agree to their discipline.

11:Cancel agreements stating that I agree to take similated deaths.

12Cancel agreements stating that I agree to pay for protection with money, property,by getting my sisters pregnat,or mother to marry Jerry Maneely, or by getting my nieces pregnant,or by having anyone brought for sexual service here at the prison,or by having anyone brought here to

prison to prove anyone by fighting for steroids.

13:Cancel agreements to participate in videos with Mary,the midget,her cousin Carla,Roy Anthony or other relatives of the aforemention,or with Tom Petty from Grand View who also resides in Portland,Oregon.

14:Cancel any agreements Dee Norris had in 1974 and mention in 1987 for her to place powder packs under people and ignite.

15:Cancel agreements stating that I would be willing to share any human being,or money,or property dating as far back as 1964.

16:Cancel agreements stating that I want to be a part of any group with Jerry Bright call Sgt.York,Donald Pegram,Dee Norris or Santos Garza,or a Maneely pup group.

[Editor's Note: The following material was originally handwritten.]

Note 150. Inhuman, Shocking, or Barbarous. "Cruel and unusual punishment" is conduct that is foul, inhuman, and violative of basic concepts of decency, punishment which is barbaric and shocking to the conscience, or physical or mental abuse or corporal punishment of such base, inhuman and barbarous proportions as to shock court's sensibilities.

My sister Alice Lopez had been continually brought into this Institution, IMSI, since it was opened in October of 1989. She has been forced to visit under threats of putting me to death and of bombing her house. The one inmate that she has visit not only in the visiting room at ISCI, but in his cell also since 1989 is Thomas Gibson. She was impregnated in 1990 by Thomas Gibson. She delivered here at IMSI and was doctored by Donald Pegram. She was kept here in tier B 2–40 for seven days.

In 1990 when I was let out for my shower I walked down stairs and saw my sister for the first-time in this institution. I did not say anything becauce the guard at the controls had let out inmate Donald Paradis Thomas Gibson, and Randal McKinney. I took the mop and return to my cell, 53,.

Randal McKinney had said that I would be put to death if I said a word.

[Editor's Note: End of handwritten material.]

Mark Henry Lankford told me in 1988 while I was in cell 76 in Building 8 and he was in cell75 that he was Det.Chuck from Greenleaf working under Det.Allan Creech from Nampa.He was in OSCI in 1981 using the name John Miller.Det.Cuck uses steroids alsos

Randal Wolf was in the recuration area for Building No.9 in 1989 while I was in the individual cage in the cages for Building No.8.I noticed that Dee Norris was in the towernext to the cages of Building No.8 with the guard.Randal Wolf was talking to Rodney "Shorty" Arriza who was in the cage next to mine.I was lying down and I lifted my head and asked Arriza who it was he was talking to.Arriza said:"Man,this dude wants to know your name." Wolf was standing at the gate of the cage for Building No. 9 and he started to talk to Dee Norris who was at the tower.He asked her for permission to approach and Dee answered "Permission granted.".Randal Wolf then took a roof plate out of his mouth and a little black key.He use the key to open the gate and ran to the back of my cage and opened the back part of the cage with both hands and slammed it shut.He ran up to me and put his penis in my mouth.In 1992 Dee Norris told me that it opens with an electric button under the counter of the tower.

Randal Wolf is one of the people hired by the aforementioned. On a Wednesday morning in 1981 Cpl.Headly was on duty in Febrary.When I was walking to my Philosophy class with Mrs.Robinson I decided to read the call-out sheet.Randal was standing on the tier with nothing on but a towel.He

put his penis on my hand right before I moved my right hand and placed it on the call-out sheet.After I decided to turn around to leave he also turned and I accidently caught his buttock in my right hand. He put his head down and said:"Okay,what didn't happened to me at OSP happened to me here,OSCI ".As he was talking he was walking to his cell pass the officers area.He was in cell 47 in Unit 11.Franco and Ernest Lyon Hikes came from OSP to investigate and neither are part of the staff.Both came from Eugene Lane County Oregon.Randal was trasfered to Oregon State Penitentary from Oregon State Correctional Institution for disciplinary reasons in 1978 and brought back in 1981 to see the parole board

Randal Wolf tends to wear a fake beard and uses steroids here in prison.

[Editor's Note: The following material was originally handwritten.]

Dee Norris

Sometime during while I was still in cell 72 in 1989 Dee got office Avila to try to agitate me after a search.The officer was trying to get me to go into the day room and fight. During the search Dee Dee's mother, her grandfather, and her grand mother were in the tower.

On the Summer of 1989 on a Saturday I had a visit and so did inmate Richard Levitt and inmate Thomas Gibson. We are handcuff before we leave our cells and shackled before we enter the visting room.In our cages where we visit we have our handcuff moved to the front of us(but remain hand cuff.). Dee was in the front of the control center playing tapes of herself crying trying to deceive me. She had the guards tell inmate Richard to place his foot on the ledge so that he could agitate me by offending me and my visitors. After the visit we are hand cuff behind our backs and have our shackles removed in back of the control center. The guards decide to removed Richard hand cuffs but he remain standing like he had them on.I was sitting on a bench and inmate Gibson was on the other side.Richard ketp looking at the guards as if waiting for a signal to attack me.He had both fist clench.

p1.

Dee Norris

The guards checked out a baton each with a hexagon head screw on the end. They never check out weapon when escorting the prisoner to and from the visits. When Gibson saw Richard attempting to come at me Gibson lifted his head and Richard stopped. Richard was hand cuff with what appeared like normal hand cuffs but latter I realize the they were fake. They came apart when pulled apart.

When we were being escorted to Building NO. 8 I hung behind inmate Richard and Gibson because I felt threaten. The officers were in fron of us prisoner and at the tower the radio Building No 8 to have someone meet the prisonersand left before anyone showed up. When I was walking behind inmate Richard pass the tower I noticed that his hand cuff came apart when he pull on them.Off. Pribble was the only officer who came out of Building No 8 to meet us;the others were gone.

p2

Santos Garza

One Sunday afernoon in the Spring of 1989 in Building NO 8 Tier–C I was being escorted by Officer Taylor and another officer. to my cell in hand cuffs. I noticed that Santos Garza and Jose Cruz Palayo were standing two feet from my cell facing me. Off.Taylor stood in between Garza and me. as Garza was saying that he want to put me to death for giving him a lot of pain and distress. Off.Taylor said:"I can not let you do that." At the same time my cell door was open by officer opperating the controls.I stepped into my cell and

nothing happen.Santo had a black gun in his hand.

Santos Garza

When I was in cell 66 in 1989 in Building-No8 on C–Tier Santos came and handcuff me when I was be escorted out of the dayroom. He scold me concerning the use of the phone.TWO guard were escorting and they never said a word to Garza.On a different day when DeeNorris and LtJame Jr Rentie were talking at the table. Santos appeared from behind me. He removed my handcuffs and wanted to know if I want to fight him.Dee gave Lt Rentie steroids and he began scolding me.

[Editor's Note: End of handwritten material.]

Thomas Gibson

While in cell 72 in 1989 during the Summer the officers that work during the day were suppose to give inmate Gibson "Chief" a knife to use against me because I was saying to inmate Araiza that Paradis was saying that Gibson was a rat,informant.Thomas Gibson and Don got in to an argument over this on the way to the library and this made the staff mad with me.Both of these inmates got two pairs of hand cuffs which allows them to reach more than with one pair like other fat guys, which was their excuse for the privilege,or myself.The staff told Gibson that they would help him get even.One morning as I,inmate Gibson and Paradis were let out of our cells to go outside the officers left right after they hand cuffed us but the doors were open before they could leave the tier.I decided to walk slow towards the front and waited in the front of the first gate that leads to C–Tier.These gates are open by the officer in the bubble.Donald was waiting at the gate that leads to the front door.There were two officers seating at the table talking to Paradis. Gibson was at the door that leads to the supply room

and the other door leads to the bubble.This area is a restricted area.He had the understanding that he was to pick up a knife there and he did.Not the same kind that we all know and see sold at stores but made from a mold.He was hollered at by Donald who was relaying for the officers.He was told that it had been cancelled but Gibson still picked it up anyway and walked up to three feet from me.Donald kept telling him it was cancelled and he was letting the officers know what was going on.Both gates to the tier,C–Tier,were open during this time.We were escorted out after Gibson returnned the knife.There was no incident until several days later when Donald Pegram, Dee,and Santos came to instigate between me and inmate Gibson;this time without hand cuffs.There present with them was Lt.James Rentie who spoke in my behalf but he still let Don Pegram do as he wanted.Don was trying to say that I was going to run down the tier because I felt threaten.

p1.

### APPENDIX C BRIEF RE STAY OF EXECUTION

IN THE SUPREME COURT OF THE STATE OF IDAHO

FEDERICO PAZ, Petitioner–Appellant,

vs.

STATE OF IDAHO, Respondent.

Case No. 20393

BRIEF RE STAY OF EXECUTION

Filed April 9, 1993

**INTRODUCTION**

This matter is before the court on Petitioner–Appellant's Motion for Stay of Execution after dismissal of a post-conviction petition filed in the District Court. Petitioner set out in his petition and in his affidavit in support of his petition detailed facts alleging that each of the issues raised in the petition now before this court were not known nor reasonably should have been known prior to the running of the forty two day period following entry of judgment in his case.[1] The State filed a

---

1. The Court in its April 2, 1993 order asked for briefing and oral argument on a limited issue. Petitioner–Appellant seeks to address that limit-

ed issue without conceding that a strict application of that rule is a violation of Petitioner's rights under the Federal and State Constitution.

general denial to the Petition without supporting affidavits going to the allegations in the Petition regarding the issues now before this court.[2]

For purposes of the decision on the grant of a stay of execution, it should be sufficient if any one of the claims raised in the Petition meets the criteria of Idaho Code § 19–2719. While there can be no argument that some of the claims fit this criteria, Petitioner contends that each and every one of the claims presented in his Petition meets that standard.

This brief will address each of the claims raised in the Second Amended Petition setting out the basis for the conclusion that each one falls within the exception contained in Idaho Code § 19–2719.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE NOT BARRED

In Idaho, the appointed trial attorney represents the defendant on direct appeal and therefore on the first post-conviction petition which must be filed before the notice of appeal pursuant to section 19–2719. Without any detailed examination of the problems confronting the indigent defendant, this Court has stated the generalization that ineffective assistance claims are one of those claims that should be known immediately after trial. *State v.*

*Rhoades,* 120 Idaho 795, 807, 820 P.2d 665 (1991).[3] When the specific allegations contained in this Petition and supporting affidavits are more closely examined, it is clear that this "generalization" is not applicable to this case.[4]

In the context of the filing of a federal habeas petition, the Ninth Circuit has commented on the "substantial burden" of properly raising all claims in one petition and discussed the impact of having unrepresented inmates prepare such petitions.

> "Compounding this burden, the petitioner is often illiterate or poorly educated and yet must decipher a complex maze of jurisprudence in order to determine which of his constitutional rights, if any, may have been violated. Such a task is 'difficult even for a trained lawyer to master,' and, understandably, is often beyond the abilities of most prisoners. [Citation.]" *Brown v. Vasquez,* 952 F.2d 1164, 1167 (9th Cir.1991), *cert. denied* — U.S. —, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992).

In reality, there is little or no way for the defendant to know whether he has been adequately represented during trial. Only when another trained lawyer reviews the record and the entire proceedings can it be determined if there are any valid claims based on the ineffective assistance of counsel. Since the trial transcripts are not even prepared within the time limits of section 19–2719, there is no possibility that an at-

---

Argument on that issue must await the full briefing on appeal.

2. The State did file two affidavits in response to the first Petition filed in this matter. Neither of these affidavits related to the allegations contained in the Petition and affidavits in support thereof that Petitioner did not know the specific claims in the Petition before the expiration of the forty-two day time limit.

3. Rhoades did not raise any specific claims of ineffective assistance of counsel but rather brought a facial challenge to the validity of the statute itself, asking the court to reconsider its decision in *State v. Beam,* 115 Idaho 208, 766 P.2d 678 (1988). The Rhoades decision upheld the statute apparently in part because section 19–2719 was not an absolute bar to successor petitions.

4. While this briefing is not the appropriate time to have this court reconsider that generalization first stated in Rhoades and cited again in *State v. Fetterly,* 121 Idaho 417, 419, 825 P.2d 1073, 1075 (1991), Petitioner finds no support in the case law for the court's conclusion regarding the timing of ineffective assistance of counsel claims. None of the out of state cases relied upon in *Rhoades* involves the raising of such claims immediately after trial. Additionally, the published opinions in the Palmer cases relied on by the Court in *Rhoades* indicate that Palmer first raised his pro se petition *after* finality of his appeal rather than immediately after trial. (Cf. *Palmer v. State,* 101 Idaho 379, 380, 613 P.2d 936 (1980); *Palmer v. Dermitt,* 102 Idaho 591, 592, 635 P.2d 955 (1981) and *State v. Rhoades,* 120 Idaho at 807.)

torney separate and distinct from trial counsel can analyze the trial court proceedings.

Moreover, in the instant matter, the Petitioner was not even aware that his attorney had filed a Petition or that the Petition would be dismissed because the Petitioner had not signed or verified it. Such action by the attorney could be considered ineffective assistance of counsel per se. In addition, the Petitioner was neither well-educated nor well-versed in the legal system. Moreover, he was suffering from a severe mental illness. Because of the complexities of these types of claims, there was no way for him to analyze the matter to determine if such claims should be raised. Indigent, incarcerated and mentally ill, he was required to rely on his appointed attorney for effective representation at that stage of the proceedings. That he did not receive such representation should not bar his access to the courts now to obtain relief.

In a recent case, this Court has ruled that it was improper for a trial court to dismiss a post-conviction petition alleging ineffective assistance of counsel without holding an evidentiary hearing. See *Matthews v. State*, 122 Idaho 801, 839 P.2d 1215 (1992). Citing a concurring opinion by Justice Bakes, the court stated that "The question of competency of counsel is an *extremely complex factual determination* which, in all but the most unusual cases, requires an evidentiary hearing for determination." Id. at 806, 839 P.2d at 1220 (Emphasis added.) To hold that this Petitioner should have reasonably known to raise this "extremely complex factual" matter within forty two days of his sentencing finds no support in the record before this court.

The appointment system is Idaho demands that trial counsel almost immediately identify specific instances of potential deficiencies in his or her own performance at trial. An overwhelming obstacle is created by this system: a clear conflict between client and attorney is created at the point of the imposition of judgment.

In this matter, the trial attorney never investigated his own performance for ineffectiveness and acknowledged that the mere raising of such issues created a conflict which required his withdrawal from the case. No other counsel was appointed throughout the initial state proceedings so that Petitioner never received the independent examination of the record which is required in order to determine if there had been ineffective assistance of counsel.

Is it reasonable to believe that an attorney within forty two days of conviction will file a petition on behalf of his client alleging with the specificity required that he (the attorney) failed to take the steps a reasonably competent attorney should have taken and because of this failure his client has been prejudiced? Is it reasonable for the petitioner himself to make such a claim without consultation with separate counsel? Petitioner posits that the response to these questions must be no and that this Petitioner must be able to raise in a successor Petition these types of claims.

Here, never having contacted or investigated possible mental defenses at trial or sentencing, the trial attorney continued on that same course and did not challenge his own performance. Because of this continuous representation, the attorney never conducted the investigation which would have uncovered this issue. Nor is it reasonable to assume that this Petitioner would be able to represent himself coherently in any such matter. This court has only to look at his pro se filing in Ada County which is attached as an exhibit to the Second Amended Petition to see that there was no possibility that he could have taken such action to preserve any claims. The trial court considering that filing described it as "completely unintelligible." (See Exhibit 1 to Second Amended Petition.)

The Petition here states clear reasons for the failure to file claims within the forty two day time limit of section 19–2719. The State presents only a general denial of this claim. In the posture of this case, the allegations of the Petition must be resolved in the favor of the Petitioner (*Smith v.*

*State*, 94 Idaho 469, 472, 491 P.2d 733, 736 (1971)), and they demonstrate that the claims of ineffective assistance of counsel were not known and could not have reasonably been known by the Petitioner.

Thus, each claim listed in Paragraph VII.A. of the Petition contained at Pages 3–10 relating to the ineffective assistance of counsel at trial meets the standard set out in section 19–2719. Claims D, E, and G are also properly included in this Petition because they were not raised by the appointed attorney and because the Petitioner was not capable of raising them himself within the established time limit.

## CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL WERE NOT KNOWN WITHIN THE TIME LIMIT

Claims B and C relate to the effective assistance of counsel during direct appeal and the consolidated post-conviction proceeding. There was no possibility that Petitioner knew or could have known that his attorney would at a point in the future provide ineffective assistance of counsel. In this matter, as in almost all other appeals, the transcripts of the trial court proceedings were not even prepared within the forty two day limit. No Petitioner in this circumstance will know what issues may be omitted through his counsel's oversight until long after the time limit of section 19–2719 has passed.

This court has recognized the fundamental truth of this situation holding that claims of ineffective assistance of counsel on appeal could not have been raised on direct appeal and are thus properly brought is a later post-conviction petition. *Matthews v. State*, supra, 122 Idaho at 806, 839 P.2d at 1220. Since the post-conviction proceeding was consolidated with the direct appeal, Petitioner similarly could not have anticipated his counsel's deficiencies in this joined proceeding.

## THE ISSUE REGARDING THE CONFLICT OF INTEREST BETWEEN TRIAL COUNSEL AND THE PROSECUTION IS PROPERLY BEFORE THE COURT

In Claim F, Petitioner alleges an absolute conflict of interest existed as one of his attorneys also worked for the prosecutor. Petitioner alleges in his Petition and affidavit in support thereof that he was never told by his counsel that Fred Grant was also employed by the Prosecutor's office during his trial and appeal. The State presents no evidence that the Petitioner was ever informed of or waived this conflict.

Petitioner could not have discovered this information within the time limit, especially when he was appointed the same attorney who had the conflict. It could not be expected that all of a sudden the attorney would raise this issue or inform the Petitioner of its existence; indeed, the attorney never did inform his client of this conflict. Thus, it was simply impossible for the Petitioner to raise this issue within the time limit.

## THE PETITIONER'S MENTAL COMPETENCY TO BE EXECUTED MUST BE CONSIDERED IN THIS PETITION

Claim H involves the Petitioner's mental competency to be executed. It is expected that the State will concede that this issue could not have been known within the time limit as the State asserted that this exact claim was premature when it was raised in Federal Court in 1991.[5] In its answer to that claim first raised by Petitioner in November 1991, the State responded that "this assertion is premature inasmuch as no warrant for petitioner's execution is now outstanding and no issue of insanity preventing execution could have arisen." (Respondent's Answer dated January 10, 1992 filed in Case No. 91–0469–S–HLR., attached hereto.)

---

**5.** Because these briefs are filed simultaneously, Petitioner–Appellant can only attempt to predict the response of the State on this issue.

Having so argued that the issue was premature before, the State should be estopped from now asserting that somehow this issue should have been raised five years ago when it was even more premature. Petitioner is now under a warrant of death to be carried out on April 23, 1993, a mere eleven days after the oral argument on this motion. Certainly, this issue is properly before the courts at this time.

## CONCLUSION

For the foregoing reasons, each of the claims raised by Petitioner in his Second Amended Petition are properly before the court because each of them was not known nor reasonably should have been known within the forty two day time limit of section 19-2719.

Dated this 9th day of April, 1993.

Respectfully submitted,

(s) Andrew Parnes
Andrew Parnes
Charles Peterson
Attorneys for Petitioner