8 P.3d 636

**Lacey Mark SIVAK, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 24823.

Supreme Court of Idaho.

June 1, 2000.

Rehearing Denied Sept. 12, 2000.

642

Leo N. Griffard, Jr., Boise, for appellant.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. L. LaMont Anderson argued.

KIDWELL, Justice.

Lacey Mark Sivak appealed from the district court's dismissal of his third petition for post-conviction relief in a capital case. We affirm.

## I.

## FACTS AND PROCEDURAL HISTORY

### A. Procedural History.

Lacey Mark Sivak was arrested for the April 1981 robbery and murder of Dixie Bell Wilson, a Garden City gas station attendant.[1] Sivak's trial took place in September 1981. The jury found Sivak not guilty of premeditated murder, but guilty of robbery and felony murder. On December 16, 1981, the district court imposed a fixed life sentence for the robbery conviction and the death sentence for the first degree felony murder conviction.

This Court vacated Sivak's death sentence three times for procedural defects. *See State v. Sivak*, 105 Idaho 900, 901 n. 1, 674 P.2d 396, 397 n. 1 (1983) (*Sivak I*) (delivery of sentencing findings of fact and conclusions of law without an open court hearing); *Sivak v. State*, 112 Idaho 197, 203, 216, 731 P.2d 192, 198, 211 (1986) (*Sivak II*) (failure to consider all of Sivak's mitigating evidence at sentencing hearing); *State v. Sivak*, 119 Idaho 320, 322, 806 P.2d 413, 415 (1990) (*Sivak III*) (improper weighing of aggravating and mitigating circumstances and improper consideration of victim impact testimony). In addition, applying the doctrine of merger, this Court vacated Sivak's robbery conviction and directed the district court to dismiss the robbery conviction on remand. *Sivak II*, 112

Idaho at 213, 731 P.2d at 208. This Court also rejected Sivak's request for a new trial based on his claim that the prosecution failed to disclose evidence of a special agreement it had reached with a jailhouse informant to secure his testimony. *Id.* at 206, 208, 731 P.2d at 201, 203.

After Sivak's death sentence was vacated for the third time, the district court held another sentencing hearing. On September 29, 1992, it entered findings of fact, entered a new judgment of conviction, and re-imposed the death penalty. Following re-imposition of the death sentence, Sivak filed a second petition for post-conviction relief. On May 5, 1993, the district court dismissed the petition because Sivak had previously raised the issues in his first petition for post-conviction relief. This Court consolidated Sivak's direct appeal and his appeal from the dismissal of the second petition for post-conviction relief, and affirmed both actions of the district court. *State v. Sivak*, 127 Idaho 387, 389, 394, 901 P.2d 494, 496, 501 (1995) (*Sivak IV*).

Sivak then filed a petition for a writ of habeas corpus with the United States District Court for the District of Idaho. On June 18, 1996, the federal district court granted Sivak's request to conduct discovery on his claim of withheld evidence. The State objected, claiming work-product immunity. The federal district court rejected the State's work-product defense and ordered the State to open the prosecutor's notes and files to Sivak. This discovery revealed four letters that provided additional information on the relationship between the prosecution and a jailhouse informant, Jimmy Leytham. The previously undisclosed letters impeached Leytham's conflicting testimony about the lack of a deal between him and the prosecution. Sivak then asserted an additional claim alleging that the prosecutor knowingly permitted Leytham to testify falsely at trial.

In an order of December 16, 1997, the federal district court found that both the withheld evidence and prosecutorial misconduct claims were meritorious. It did not reach the merits of the claims, however, because it found that they had not been ex-

---

1. Co-defendant Randall Bainbridge was tried and convicted in a separate trial.

hausted in Idaho state courts. It allowed Sivak to withdraw the claims from his finalized federal writ on or before January 15, 1998.

Sivak filed his third state petition for post-conviction relief on February 26, 1998. He asserted that the State denied his due process rights by withholding evidence of an agreement between Leytham and the prosecution. Sivak also asserted that the State engaged in prosecutorial misconduct by knowingly presenting Leytham's false testimony at trial and by presenting false testimony during Sivak's first post-conviction proceeding. The State moved to dismiss on May 4, 1998, asserting that the petition was barred under I.C. § 19–2719.

On June 3, 1998, the district court issued its Memorandum Decision and Order. For purposes of the motion the court assumed that Leytham made a deal in return for his testimony against Sivak and the State failed to inform the defense of the deal. Relying on *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the district court concluded that no constitutional error occurred because eliminating Leytham's testimony would not have changed the result of the trial. On this basis the district court granted the State's motion to dismiss. Sivak filed a timely notice of appeal on July 7, 1998.

**B. Testimony in Prior Proceedings.**

Jim Harris, then Ada County Prosecuting Attorney, presented the State's case at Sivak's jury trial. The State showed that Sivak, who formerly worked at the same gas station as Wilson, had been fired approximately six weeks before the murder, in part for his inability to work harmoniously with Wilson. Two witnesses placed Sivak and Bainbridge at the gas station at approximate-

ly 6:45 a.m. on the morning of the murder. Shortly after 7:00 a.m., customers discovered Wilson in a back room of the station. She had been stabbed twenty times and shot seven times at close range. She died later that day. A knife blade was found at the scene. Ballistic results matched a .22 revolver found in Sivak's storage shed to bullets recovered from the murder scene. Although the .22 was mostly wiped clean, it contained Sivak's fingerprint.

At trial, a former Ada County inmate, Jimmy Leytham, testified that Sivak had made incriminating statements to him.[2] On direct examination, Leytham testified that he came forward with information about Sivak "[b]ecause I have a wife and kids out on the streets, and I wouldn't want anything to happen to them." He said that he did not ask for any particular favoritism from the State in exchange for his willingness to testify. When specifically asked if county or State agencies did anything for him, he stated, "After the preliminary hearing my escape got dismissed for me." He also noted that a charge pending in Twin Falls was dismissed. When Harris asked, "Do you know whether or not my office had anything to do with that?" Leytham replied, "I don't know." Leytham stated that he was on unsupervised parole. On cross-examination, the defense did not ask Leytham pointed questions about any deals with the prosecution, but it did highlight all the charges that had been pending against Leytham.[3] It then asked, "[I]s it fair to say that you are a free man today because you testified here today and because you testified in Nathan Crispin's case?"[4] Leytham responded, "No, sir."

In Sivak's first petition for post-conviction relief, Sivak charged that the prosecution failed to reveal the substance of agreements

---

**2.** Leytham testified that when he asked Sivak why he shot and stabbed Wilson so many times, Sivak replied, "[B]ecause she kept on moving." Leytham also testified that Sivak told him that he threw the knife handle into the river near the fairgrounds, that he also used a .22, and that he held a grudge against Wilson.

**3.** Leytham had been convicted for a Mountain Home burglary in 1978 and for passing insufficient funds checks in 1979. He escaped from the Cottonwood penitentiary in September 1979.

After the escape, Leytham committed a burglary in Boise County. He was placed in the Ada County jail but escaped. He was charged with a January 1980 burglary in Twin Falls. In May 1980, Leytham turned himself in. In April 1981, Leytham was incarcerated at the Ada County jail pending trial on his outstanding charges.

**4.** Leytham testified against Nathan Crispin, another Ada County inmate, at a murder trial in Kansas.

with Leytham. *Sivak II*, 112 Idaho at 206, 731 P.2d at 201. Ada County Prosecutor Harris testified that his office had used Leytham as a jailhouse informant before the Sivak material emerged. *Id.* at 207, 731 P.2d at 202. Harris stated that he told his investigators he would "make no deals" with Leytham but "would consider his testimony with regard to other sentencing decisions we had to make regarding his cases." *Id.* Harris testified that "to the best of my recollection, subsequent to his testimony" his office reduced or dismissed a charge pending against Leytham, as much for his cooperation in other cases as in the Sivak case. *Id.* Harris claimed, "We didn't consider his testimony in this case as being all that important, frankly." *Id.* at 208, 731 P.2d at 203.

This Court addressed this issue on appeal. After quoting at length from Harris's testimony, the Court concluded, "It is clear ... that the state made no specific agreement with Leytham whereby his cooperation in Sivak's case would result in future lenient treatment." *Id.* It noted that defense counsel knew that Sivak was cooperating on the Kansas [Crispin] case and that the prosecutor would take Leytham's cooperation into account when considering other prosecutions against him. *Id.* This Court concluded that Sivak did not meet his burden of showing that there was an agreement that the State failed to disclose to the defense. *Id.*

## C. The Four Newly Discovered Letters.

The four letters revealed in discovery during federal habeas proceedings form the basis for Sivak's present petition. The first is a May 7, 1981 letter from Harris to the Idaho County prosecutor. Based on Leytham's cooperation in three murder cases, Harris wrote, "[I]t would be my request that charges against Mr. Leytham in Idaho County, relating to the escape above mentioned, be dismissed by your office." Harris continued, "I do believe that based on the fact that Mr. Leytham will obviously not be sentenced to the State Penitentiary (based on his willingness to testify against these individuals), justice will be served adequately without proceeding further on the escape charge pending in your jurisdiction."

The second is a May 12, 1981 letter from Harris to the Pardon and Parole Commission. Harris recommended that Leytham receive "additional consideration for parole" at his May 20, 1981 parole hearing, based on his cooperation in the Sivak, Bainbridge, and Crispin cases. Harris stated that Leytham had testified for the prosecution in the preliminary hearing on the Wilson murder case and would testify at trial.

The third is a July 13, 1981 letter from Leytham attempting to obtain money from Jerry Brown, evidently a Kansas prosecutor. In it, Leytham wrote, "Vaughn [Killeen, investigator for the Ada County Prosecutor] told me you are in the same position Idaho is in. They say they will help me when I get out but don't do any thing about it ."

The fourth is a July 27, 1981 letter from Vaughn Killeen to Leytham. Killeen had received a copy of Leytham's July 13 letter to Brown. Killeen chided Leytham for his attempt to get paid for his testimony, stating:

> If you recall you had information regarding the Bainbridge–Sivak case and you approached me about a "deal." I informed you we couldn't make "deals" but if you desired to testify I would attempt to do something for you but there would be no guarantees.... [Leytham's testimony in the Sivak, Bainbridge, and Crispin cases] enable[d] us to make the arrangements which were specifically; the dismissing of criminal charges against you in two jurisdictions, a reduction in sentence and a parole from the Idaho State Correctional Institute.

Killeen then noted, "Without our intervention you would still be in prison with other pending criminal charges against you."

## II.

## STANDARD OF REVIEW

 Summary dismissal of a petition for post-conviction relief is the procedural equivalent of summary judgment under I.R.C.P. 56. *McKinney v. State*, 133 Idaho 695, 700, 992 P.2d 144, 149 (1999). On review of a dismissal of a post-conviction relief application without an evidentiary hearing, the Court must determine whether a genuine

issue of material fact exists based on the pleadings, depositions and admissions together with any affidavits on file. *Id.* The Court liberally construes inferences in favor of the petitioner. *See id.*

■ Whether evidence is material for purposes of due process analysis is a question of law, over which appellate courts exercise free review. *State v. Dopp,* 129 Idaho 597, 606, 930 P.2d 1039, 1048 (Ct.App.1996). Whether this Court has jurisdiction to hear a claim is a question of law which can be raised at any time. *Pizzuto v. State,* 127 Idaho 469, 471, 903 P.2d 58, 60 (1995).

## III.

## ANALYSIS

A. **Because the Previously Undisclosed Letters Provide Merely Cumulative Evidence, Sivak's Claim That the State Withheld Material and Exculpatory Evidence Regarding Its Deal With a Jailhouse Informant Is Procedurally Barred Under I.C. § 19-2719(5).**

The State urged the district court to dismiss Sivak's petition on procedural grounds, arguing that the petition was barred under I.C. § 19-2719. The district court did not reach the procedural issue. Instead, it decided that, even if the allegations in Sivak's petition were true, Sivak had not stated a claim for relief. On appeal, the State urges this Court to affirm the district court's dismissal based on the theory that I.C. § 19-2719 bars relief.

■ Post-conviction relief is available to persons convicted of crimes who claim, among other things, that their convictions or sentences violate the federal or state constitutions, that material facts not previously presented require vacating them, or that they are otherwise subject to collateral attack under common law or statute. I.C. § 19-4901(a). Post-conviction proceedings are special proceedings, civil in nature. I.C.R. 57(b); *Pizzuto,* 127 Idaho at 470, 903 P.2d at 59. To prevail, the petitioner must prove by a preponderance of the evidence the allegations on which application for relief is

made. I.C.R. 57(c); *McKinney,* 133 Idaho at 700, 992 P.2d at 149. To justify a post-conviction evidentiary hearing, the petitioner must make a factual showing based on admissible evidence. *McKinney,* 133 Idaho at 700, 992 P.2d at 149.

■ In capital cases, post-conviction proceedings are primarily governed by I.C. § 19-2719. *See id.* Where I.C. § 19-2719 is silent, the Uniform Post-Conviction Procedure Act (UPCPA) (I.C. §§ 19-4901 to -4911) applies. *Id.* A petitioner for post-conviction relief under I.C. § 19-2719 generally has one opportunity to raise all challenges to the conviction and sentence. I.C. § 19-2719(4)—(6); *McKinney,* 133 Idaho at 700, 992 P.2d at 149. If a defendant fails to assert a claim within 42 days of the filing of the judgment imposing the death penalty, he is deemed to have waived any claims for relief that were known, or should have been known, at that time. I.C. § 19-2719(3)—(5); *McKinney,* 133 Idaho at 700, 992 P.2d at 149. In capital cases, a successive petition is allowed only where the petitioner can demonstrate that the issues raised were not known or could not reasonably have been known within the 42-day time frame. I.C. § 19-2719(5)(a); *State v. Rhoades,* 120 Idaho 795, 807, 820 P.2d 665, 677 (1991). A successive petition is facially insufficient to the extent that it alleges matters that are cumulative or which would not cast doubt on the reliability of the conviction or sentence even if the allegations were true. I.C. § 19-2719(5)(b).

The State advances three theories to support its contention that Sivak's petition is procedurally barred. First, it asserts that Sivak brought the identical issue before this Court in *Sivak II.* Thus, it contends, Sivak has waived this "claim for relief" under I.C. § 19-2719(5) because the claim was advanced in a previous post-conviction proceeding. Second, the State contends that the letters were discoverable because the Ada County prosecutor had an open file policy, or alternatively that the defense itself could have contacted the parole commission and the prosecuting attorneys of Idaho, Twin Falls, and Boise counties to discover what, if any, arrangements the Ada County prosecutor had made on Leytham's behalf. Third, the State

argues that material in Leytham's pre-trial deposition made it clear that Leytham had an understanding with the prosecution and had received benefits for testifying. Even if the suppressed letters themselves were unknown, the State urges, the letters present material that is merely cumulative or impeaching, which is facially insufficient under I.C. § 19–2719(5)(b) to support a successive petition.

■ We reject the State's theory that Sivak has waived this claim for relief merely because he raised the issue in his first post-conviction petition. As Sivak concedes, this petition presents not a new claim but new evidence supporting an old claim. Applying this rule as the State requests would result in Idaho courts being unable to entertain evidence of actual innocence in successive post-conviction petitions, even where the evidence was clearly material or had been suppressed by prosecutorial misconduct. We must be vigilant against imposing a rule of law that will work injustice in the name of judicial efficiency.

■ We likewise reject the State's theory that the letters were discoverable merely because of the prosecutor's open file policy.[5] In *Strickler v. Greene*, the U.S. Supreme Court rejected just such an assertion by the State of Virginia. *Strickler v. Greene*, 527 U.S. 263, 284–86, 119 S.Ct. 1936, 1949–51, 144 L.Ed.2d 286, 303 (1999). Defense attorneys are entitled to rely on the presumption that prosecutors have fully discharged their official duties, including the duty to disclose exculpatory material. *Id.* at 286–87, 119 S.Ct. at 1951, 144 L.Ed.2d at 303.

■ We find the State's third argument, however—that the previously undisclosed letters present only cumulative evidence—to be persuasive. In his pre-trial deposition, Leytham admitted that he had received benefits for his testimony in Sivak's case. On direct examination, the following exchange occurred:

Q. Has my office done anything for you or with you with regard to your cooperation with us in this case, Mr. Leytham?

A. Well, yes. They got my escape dismissed for me.

Q. Where was that pending?

A. Idaho County.

Q. And that was an escape from where?

A. State penitentiary, Cottonwood.

. . . .

Q. Have we done anything else for you that you know of?

A. The Twin Falls case.

Q. Do you know what charge that was?

A. Supposed to have been first-degree burglary.

Q. Was that ever filed; do you know?

A. No.

Q. Do you know whether or not we had anything to do with that?

A. I went to a hearing for courtesy of another county on January the 16th and I haven't heard anything about that since.

On cross-examination, Leytham engaged in the following exchange with defense counsel:

Q. Did you eventually go to a trial on the [Cottonwood] escape charge?

A. No.

Q. What happened to the escape charge?

A. They dismissed it.

. . . .

Q. It was dismissed May 21st of '81?

A. Somewhere around that area, yes. I don't have any papers with me.

Q. And that was because of your cooperation in this case that you're testifying on?

A. Yes.

. . . .

Q. Now, Mr. Leytham, would you explain to me your understanding of the benefits that you would get by testifying in

**5.** The State contends that its reluctance to disclose the letters in the federal court proceeding was due solely to the difference in discovery rules between criminal and civil proceedings. We note that, under the State's theory, the State would not have voluntarily disclosed the existence of the letters to Sivak during Sivak's first post-conviction proceeding because state post-conviction proceedings are also civil in nature.

this trial? What was your understanding of the various things that would be of benefit to you if you testified?

A. There is no benefits.

Q. You will receive absolutely no benefits or consideration for testifying?

A. Well, they—after the preliminary hearing I got my escape dismissed on me.

Q. So that's one thing that happened, is you had an escape charge dismissed; is that right?

A. That's it, yes, sir.

Q. Any other things that happened?

A. No, sir. They transferred me to another county; that is about it.

. . . .

Q. [E]xplain to me the negotiations that went on with regards to having the escape charge dismissed.

A. Okay. They put a recommendation into the pen for parole.

Q. Who is "they?"

A. Jim Harris.

Q. And that was discussed with you?

A. Before?

Q. Yes.

A. No.

Q. What was your understanding then of what was going to happen as far as your cases were concerned if you testified?

A. I didn't expect anything out of it.

Q. When did you first become aware that you were going to get some benefits from testifying?

A. I'd say about May 21st when I got a letter from my attorney up north, Grangeville.

Q. Prior to the preliminary hearing on May the 1st you hadn't discussed the benefits to your testifying or what sorts of arrangements could be made as far as your other cases. Is that what you're telling me?

A. That's what I'm telling you, yes.

Q. Okay. And then after you testified at the preliminary hearing, you're telling

me that again there were no conversations at all about the benefits to you for testifying?

A. After the preliminary hearing they said they're trying to do something for me; they didn't say what.

Q. Who did you have that conversation with?

A. With Harris.

Q. And where was that?

A. At the courthouse.

Q. By "trying to do something for you," were you led to believe that you would not be spending any time in the penitentiary?

A. They didn't say that.

Q. What did you understand them to be saying?

A. That was it; I didn't expect anything out of this.

The four undisclosed letters add substance to these exchanges, but are not in conflict with them. The two letters written by Harris confirm Leytham's admission that the Ada County prosecutor was instrumental in having his escape charge in Idaho County dismissed and in recommending parole. Killeen's letter adds the additional element that Leytham approached the prosecutor's office seeking a deal. However, it too verifies that the prosecutor made recommendations following Leytham's sworn testimony in the pretrial hearing. Therefore, we hold that the four letters provide only cumulative evidence within the meaning of I.C. § 19–2719(5)(b). Because defense counsel had notice from the pre-trial deposition that Leytham and the prosecutor had reached some type of deal in exchange for his cooperation, the evidence in the letters also does not cast doubt on the reliability of Sivak's conviction or sentence under the meaning of I.C. § 19–2719(5)(b).

■ Our holding should not be read as condoning the State's action in withholding this exculpatory evidence. The letters clearly should have been disclosed to the defense, even without a specific request. *See United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342, 351 (1976). We narrowly hold that, in this instance, the

State's withholding of exculpatory evidence was cumulative with evidence already within the possession of the defense at the time when Sivak filed his first petition for post-conviction relief. Therefore, Sivak's petition based on the suppression of this evidence was barred under the operation of I.C. § 19–2719(5).

### B. Sivak's Claim of Prosecutorial Misconduct Reasonably Should Have Been Known at the Time of His First Petition for Post-Conviction Relief.

Sivak's petition asserted that the prosecution committed misconduct by knowingly allowing Leytham to testify falsely at Sivak's trial. The district court did not reach this issue in dismissing the petition. Sivak contends that the district court failed to consider the obvious inference that the prosecutor knowingly presented false testimony.

 A State may not knowingly use false evidence, including false testimony, to obtain a conviction. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1220 (1959). This principle also applies to false testimony going to the credibility of a witness, for "it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Id.* This standard applies not only to false evidence solicited by the prosecution, but also to false evidence that the prosecution allows to go uncorrected. *Id.* When the reliability of a given witness may well determine the defendant's guilt or innocence, nondisclosure of material evidence affecting the witness's credibility justifies a new trial irrespective of the good faith or bad faith of the prosecution. *Giglio v. United States,* 405 U.S. 150, 153–54, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104, 108 (1972).

 A stricter materiality standard applies to cases involving the prosecution's knowing use of false testimony than to cases where the prosecution has failed to disclose exculpatory evidence. *Agurs,* 427 U.S. at 103–04, 96 S.Ct. at 2397–98, 49 L.Ed.2d at 349–50. This is because these cases "involve a corruption of the truth-seeking function of the trial process." *Id.* at 104, 96 S.Ct. at

2398, 49 L.Ed.2d at 350. In *Bagley,* the U.S. Supreme Court quoted *Agurs* for "the well-established rule that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is *any reasonable likelihood* that the false testimony *could have affected* the judgment of the jury." *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381, 87 L.E.2d at 491 (quoting *Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397, 49 L.Ed.2d at 349) (emphasis added). "[T]he fact that testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt." *Id.* at 680, 105 S.Ct. at 3381, 87 L.Ed.2d at 492.

 At Sivak's trial, the prosecution elicited the following testimony from Leytham on direct examination:

Q. Mr. Leytham, why did you come forward to the authorities with regard to this conversation?

A. Because I have a wife and kids out on the streets, and I wouldn't want anything to happen to them.

Q. Did you ask for any particular thing—any particular favoritism from State authorities with regard to your willingness to testify in this case?

A. No.

Q. Were you given some consideration in that regard?

A. After—well, what do you mean by that?

Q. Well, did my office or any other State agency do anything for you with regard to your incarceration of [sic] the Ada County jail?

A. After the preliminary hearing my escape got dismissed for me.

Q. Okay. Anything else?

A. I had a charge pending at Twin Falls, and that was dismissed, too.

Q. Do you know whether or not my office had anything to do with that?

A. I don't know.

Q. Anything else that you were given at that time?

A. No.

Much of the above testimony the prosecutor knew to be inaccurate. As Killeen's letter makes obvious, Leytham approached Killeen about a "deal," not out of a sense of familial or civic responsibility. Leytham also asked the prosecutor for monetary compensation. Leytham knew that the prosecutor's office was responsible for his pending charges being dismissed. Although he denied receiving any other consideration, he also knew that the prosecutor's office was largely responsible for him receiving parole.

At the time of Sivak's first petition for post-conviction relief, Leytham's deposition was available. In the deposition, Leytham admitted that the prosecutor recommended parole and was involved in getting the Idaho County escape charge dismissed and a pending case in Twin Falls dismissed. The State's prosecutorial misconduct in allowing Leytham's false testimony at trial to go uncorrected was an issue which reasonably should have been known at the time of Sivak's first petition. Therefore, Sivak has waived this issue under the provisions of I.C. § 19–2719(5).

■ Much of prosecutor Harris's testimony in Sivak's first post-conviction proceeding was misleading. Although Leytham testified at his deposition that the prosecutor was involved in having two out-of-county cases dismissed, Harris testified only that he would "*consider* [Leytham's] testimony with regard to *other sentencing decisions we had to make regarding his cases.*" *Sivak II,* 112 Idaho at 207, 731 P.2d at 202 (emphasis added). The charges dropped against Leytham were not Ada County charges, and thus not sentencing decisions that the Ada County prosecutor had to make. Harris failed to mention that he requested that Leytham receive "additional consideration for parole." Harris also disingenuously suggested that Leytham's testimony was not important in Sivak's trial. He claimed that he did not communicate directly with Leytham, but Leytham in his deposition had testified that Harris spoke to him after the preliminary hearing with regard to consideration for his testimony. A prosecutor is "expected and required to be fair and has a duty to avoid misrepresentation of the facts." *State v. Griffiths,* 101 Idaho 163, 166, 610 P.2d 522,

525 (1980) (*overruled on other grounds by State v. LePage,* 102 Idaho 387, 630 P.2d 674 (1981)).

The four undisclosed letters provide additional evidence concerning the allegations of prosecutorial misconduct at trial, as well as of the prosecutor's verbal evasions in the first post-conviction proceeding. However, the additional information does not rise to such a level as to cast doubt on the reliability of Sivak's conviction or his sentence.

## IV.

## CONCLUSION

Because the previously undisclosed letters provided cumulative evidence, Sivak's claim that the State withheld material and exculpatory evidence regarding its deal with a jailhouse informant is procedurally barred. Likewise, because Leytham testified to the State's actions in his deposition, Sivak's claim for prosecutorial misconduct in presenting false testimony should reasonably have been known at the time of his first petition for post-conviction relief. Therefore, this Court affirms the district court's dismissal of Sivak's third petition for post-conviction relief.

Justices SCHROEDER and WALTERS concur.

Chief Justice TROUT, dissenting.

Because I believe I.C. § 19–2719 deprives this Court of jurisdiction to consider the merits of Sivak's petition for post-conviction relief, I must respectfully dissent from the Court's opinion in this case. Idaho Code § 19–2719(5) states:

If the defendant fails to apply for relief as provided in this section and within the time limits specified, he shall be deemed to have waived such claims for relief as were known, or reasonably should have been known. The courts of Idaho shall have no power to consider any such claims for relief as have been so waived or grant any such relief.

In the past, this Court has strictly construed this provision as depriving this Court of jurisdiction over all claims for post-conviction relief that were known, or could reasonably have been known, within 42 days of the judgment imposing the death sentence. *See, e.g., Paradis v. State,* 128 Idaho 223, 227, 912

P.2d 110, 114 (1996); *Pizzuto v. State*, 127 Idaho 469, 471, 903 P.2d 58, 60 (1995); *Paz v. State*, 123 Idaho 758, 760, 852 P.2d 1355, 1357 (1993).

In this case, Sivak's claim concerning the alleged deal between the prosecutor and Leytham was raised, addressed on its merits, and denied in his prior petition for post-conviction relief and was therefore clearly known within statutory time limits set by I.C. § 19–2719. Because Sivak has alleged only new evidence in support of an old claim, rather than alleging a new claim for relief that was not known, and could not reasonably have been known, within the statutory time limits, I believe I.C. § 19–2719(5) operates as a complete procedural bar to this portion of Sivak's petition. Similarly, as discussed in the majority opinion, I.C. § 19–2719(5) is also a complete procedural bar to Sivak's claim of prosecutorial misconduct. Consequently, I believe this Court should have dismissed Sivak's petition for lack of jurisdiction rather than affirming the district court's summary dismissal of the petition.

Justice SILAK concurs.