# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34236

PAUL EZRA RHOADES, )
)
                           Petitioner/Appellant, )
)
v. )
)
STATE OF IDAHO, )
)
                               Respondent. )
)

**Boise, August 2009 Term**

**2009 Opinion No. 126**

**Filed: October 19, 2009**

**Stephen W. Kenyon, Clerk**

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

The appeal is dismissed pursuant to I.C. § 19-2719.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Oliver Loewy argued.

Lawrence G. Wasden, Attorney General, Boise, for respondent. Lamont Anderson argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This case arises from Appellant Paul Ezra Rhoades's (Rhoades) 1988 conviction for the murder, kidnapping, robbery, rape, and infamous crime against nature of Susan Michelbacher. In 2002, Rhoades filed a petition for post-conviction relief and new DNA testing. Rhoades filed a motion to amend his petition, which the district court denied. Rhoades then filed a motion to withdraw Count I of his petition in order to appeal the district court's denial of his motion to amend. The district court granted the withdrawal and dismissed Rhoades' petition. Rhoades appeals to this Court contending that it was error for the district court to deny his motion to amend his petition for post-conviction relief.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Rhoades was convicted in 1988 of murdering three people, including the first-degree murder, first-degree kidnapping, infamous crime against nature, robbery, and rape of Susan Michelbacher. This Court affirmed his convictions and sentences, which included the imposition of the death penalty. *State v. Rhoades*, 121 Idaho 63, 80, 822 P.2d 960, 977 (1991).

DNA recovered from the crime scene consists of three semen samples taken from Susan Michelbacher's body, presumably deposited after her death by her attacker. In 1987, the Idaho Forensic Laboratory conducted a PGM analysis[1] on the semen to determine the donor's identity. This testing did not rule out Rhoades as a donor of the semen. The Forensics Laboratory then sent the sample swabs to the FBI Bureau of Laboratories for a more refined DNA test. Using the swabs, the FBI generated the 1987 DNA report at issue in this case. The report was not used at Rhoades's trial even though it was available.

Rhoades filed his petition for post-conviction relief in 2002 seeking new scientific testing of DNA collected by the police during the investigation of Susan Michelbacher's murder pursuant to I.C. § 19-4902 (Count I).[2] The district court stayed proceedings in order to conduct DNA testing. In 2005, Rhoades then filed a motion to amend the petition for post-conviction relief seeking to add claims that the prosecutor knowingly violated his constitutional rights by presenting allegedly false DNA evidence (Count II) and that Rhoades is actually innocent of the crimes (Count III). Rhoades supported his motion to amend with two affidavits by Greg Hampikian, Ph.D., interpreting the FBI DNA tests conducted prior to trial. The district court denied Rhoades' motion to amend because Rhoades had been in possession of the FBI report since 1987 and did not present any evidence as to why he could not have obtained an expert to examine the report at the time that his petition was filed in 2002. Rhoades subsequently withdrew Count I of his petition, which alleged that the DNA samples exonerated Rhoades as the perpetrator of the crime. This appeal is based solely on whether the district court should have allowed Rhoades to amend his petition to add Count II and Count III.

## III. ISSUE ON APPEAL

---

[1] PGM refers to an enzyme found in bodily fluids such as blood, vaginal secretions, and semen. It comes in a finite number of variations, much like blood types such as A, B, and so on.

[2] A petitioner may file a petition for DNA testing "on evidence that was secured in relation to the trial which resulted in his or her conviction but which was not subject to the testing that is now requested because the technology for the testing was not available at the time of trial." I.C. § 19-4902(b).

A.      Whether the district court correctly denied Rhoades's motion to amend his petition for post-conviction relief to add a count alleging a *Brady* violation under Idaho Code § 19-2719.

B.      Whether the district court correctly denied Rhoades's motion to amend his petition to add an "actual-innocence" count under Idaho Code § 19-2719.

## IV.  STANDARD OF REVIEW

Post-conviction proceedings are civil in nature, and are therefore governed by the Rules of Civil Procedure. *McKinney v. State*, 133 Idaho 695, 699, 992 P.2d 144, 148 (1999). "[T]he decision to grant or refuse permission to amend is left to the sound discretion of the trial court." *Jones v. Watson*, 98 Idaho 606, 610, 570 P.2d 284, 288 (1977). However, jurisdictional issues are questions of law that can be raised at any time. *Rhoades v. State*, 135 Idaho 299, 300, 17 P.3d 243, 244 (2000). The Idaho Supreme Court exercises free review over questions of law. *Munson v. State*, 128 Idaho 639, 642, 917 P.2d 796, 799 (1996).

## V.  ANALYSIS

**A.      The District Court Was Correct in Determining that It Was Without Jurisdiction to Permit Rhoades to Amend his Petition to Allege a *Brady* Violation.**

Rhoades filed his motion to amend the petition for post-conviction relief asserting a *Brady* violation[3] (Count II) and "actual innocence" (Count III) arising from the 1987 DNA report.

"The Uniform Post-Conviction Procedure Act 'is the exclusive means for challenging the validity of a conviction or sentence.'" *Hays v. State*, 132 Idaho 516, 519, 975 P.2d 1181, 1184 (Ct. App. 1999) (quoting *Gomez v. State*, 120 Idaho 632, 634, 818 P.2d 336, 338 (Ct. App. 1991)). Post-conviction proceedings are generally governed by the Uniform Post Conviction Procedure Act (UPCPA). I.C. §§ 19-4901 to -4911; *McKinney*, 133 Idaho at 700, 992 P.2d at 149 (1999). However, in capital cases, "the UPCPA is modified by I.C. § 19-2719 . . . [and] supersedes the UPCPA to the extent that their provisions conflict." *McKinney*, 133 Idaho at 700, 992 P.2d at 149.

Under I.C. §19-2719, the defendant has forty-two days from the judgment imposing the death penalty to file a petition. I.C. § 19-2719(3). "The time limitations contained in I.C. § 19-2719 are jurisdictional in nature, the statute specifically depriving the courts of Idaho of the

---

[3] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963) (holding that it is a violation of due process for the prosecutor, whether acting in good faith or in bad faith, to not disclose all "evidence favorable to an accused upon request where the evidence is material either to guilt or to punishment").

power to consider any claims for relief that have been waived under the statute." *Pizzuto v. State*, 127 Idaho 469, 471, 903 P.2d 58, 60 (1995).[4] All claims that were known or could have been known within forty-two days of judgment that are not raised in the first petition for post-conviction relief are deemed waived. I.C. § 19-2719(5); *Porter v. State*, 136 Idaho 257, 259, 32 P.3d 151, 153 (2001). There is an exception to the forty-two day rule under subsection (5). A petition may be maintained after the expiration of the forty-two days if the claims for relief were not known, or could not reasonably have been known. I.C. § 19-2719(5). However, it is well settled that the statute places a "heightened burden" on the defendant to make a prima facie case that the matter could not reasonably have been known within forty-two days of the judgment. *E.g. Dunlap v. State*, 131 Idaho 576, 577, 961 P.2d 1179, 1180 (1998) (citing *Paz v. State*, 123 Idaho 758, 760, 852 P.2d 1179, 1357); *McKinney*, 133 Idaho at 701, 992 P.2d at 150. "Any successive petition for post-conviction relief not within the exception of subsection (5) of the statute shall be dismissed summarily." *Fields v. State*, 135 Idaho 286, 289, 17 P.3d 230, 233 (2000).

Rhoades's motion to amend was filed in July of 2005. In the motion to amend, Rhoades claims that the prosecutor had full knowledge that the 1987 FBI report exonerated him and therefore violated *Brady* by presenting testimony at trial linking Rhoades to the samples collected from Susan Michelbacher's body. Rhoades further contended that his amended petition was timely because he only recently obtained an expert to examine the report in 2005 when he moved to amend. Rhoades presented the affidavit of Dr. Hampikian to support his amended petition. It states that the report ruled out Rhoades as the donor of one of the three semen samples taken at the crime scene, but that the other two samples "failed to exhibit sufficient activity to allow a conclusive determination of any PGM subtype present."

Rhoades fails to explain why he could not reasonably have known about the report's conclusions. Defendants are entitled to expect the prosecutor to disclose exculpatory evidence, not merely to make it available. *Sivak v. State*, 134 Idaho 641, 642, 8 P.3d 636, 647 (2000) (citing *Strickler v. Greene*, 527 U.S. 263, 286–87, 119 S. Ct. 1936, 1951 (1999)). Here,

---

[4] In *Pizzuto*, this Court acknowledged that the legislature created a jurisdictional bar against hearing post-conviction claims later than forty-two days after the judgment. *Pizzuto*, 127 Idaho 469, 471, 903 P.2d 58, 60. Rhoades waited until his Reply to raise a separation-of-powers issue as to whether I.C. § 19-2719 encroaches on the district courts' jurisdiction under the Idaho Constitution. Because he did not raise the issue in his opening brief, this Court does not reach the separation-of-powers question. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).

however, Rhoades received a copy of the FBI's DNA report and was appointed an expert, Richard Fox, to review the report before trial.[5] It was readily apparent to any expert that the report might contain exculpatory information. The most damaging indication that Rhoades should have known about the report's implications comes from his own expert, Dr. Hampikian, who stated in an affidavit that:

> The analysis I conducted was generally, perhaps universally, accepted by the community of forensic biologists as well as the community of forensic serologists in 1987. Further, once the FBI completed its testing . . . , whether Mr. Rhoades was a potential contributor of the semen was not a matter of interpretation or opinion. Any forensic scientist with expertise in PGM analysis would have reached the same conclusions as I did.

Rhoades has accordingly failed to meet the "heightened burden" of I.C. § 19-2719. The district court was therefore without jurisdiction to grant Rhoades's motion to amend his petition for post-conviction relief.

**B.      The District Court Correctly Held that it Is Without Jurisdiction to Permit Rhoades to Amend His Petition to Add an "Actual Innocence" Count.**

Rhoades similarly contends that the potentially exculpatory DNA report shows that he is actually innocent of the crimes he was convicted of because the state relied on a single-attacker theory to convict him, and one of the semen swabs on the victim has allegedly been shown not to contain his DNA.

For reasons identical to the purported *Brady* violation above, Rhoades waived any "actual innocence" issue when he failed to raise it within forty-two days of the judgment. A defendant filing a successive petition must show the existence of an issue that he could not reasonably have known of and support the petition with new material facts. I.C. § 19-2719(5). As explained above, Rhoades had received the 1987 FBI report allegedly excluding him from being a donor of one of the semen samples found on the victim and could therefore have raised the issue long ago. He bases his motion to amend solely on his expert's opinion of the report. Therefore, he alleges no new material facts to support an "actual innocence" claim.

Moreover, a pleading "shall be deemed facially insufficient to the extent it alleges matters that . . . would not, even if the allegations were true, cast doubt on the reliability of the conviction." I.C. § 19-2719(5)(b). The 1987 FBI report states that only one of the three semen

---

[5] The district court also granted a motion requiring the state to list and make available all physical evidence in its custody that had not yet been tested.

swabs, labeled Q1, produced a measurable test result.  The Q1 swab was PGM Sub1+.  This, according to Dr. Hampikian's affidavits, rules out Rhoades as the semen donor because he is a PGM Sub1-1+, a different PGM subtype.  However, Dr. Hampikian later admitted in an affidavit submitted during Rhoades's federal habeas corpus proceedings that the victim's own tissue may have actually been caught in the swab and caused the test result because she was also the same PGA subtype as the Q1 swab. *Rhoades v. Arave*, No. CV 93-0156-S-EJL, 2007 WL 951897, at *32 (D. Idaho Mar. 28, 2007). Thus, even if Rhoades could not reasonably have known about the report's full implications until his expert reviewed it in 2005, the report is essentially inconclusive as to whether the DNA is simply the victim's and not from an alternate perpetrator. There is no new material fact here that tends to cast doubt on the reliability of the conviction under I.C. § 19-2719(5)(b).

## VI.  CONCLUSION

For the foregoing reasons, the appeal is dismissed pursuant to I.C. § 19-2719.

Chief Justice EISMANN, Justices BURDICK, HORTON and Justice *pro tem* TROUT, **CONCUR.**