## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 34845

|  |  |  |
|---|---|---|
| GERALD ROSS PIZZUTO, | ) | Boise, January 2010 Term |
| | ) | |
| Appellant, | ) | 2010 Opinion No. 33 |
| v. | ) | |
| | ) | Filed: March 19, 2010 |
| STATE OF IDAHO, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| Respondent. | ) | |
| | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Patrick H. Owen, District Judge.

The decision of the district court is <u>affirmed</u>.

Federal Defenders of the Eastern District of California, Sacramento, CA, for appellant. Joan Fisher argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. L. LaMont Anderson argued.

_____

W. JONES, Justice

### FACTS AND PROCEDURAL HISTORY

Gerald Ross Pizzuto, Jr. was convicted of grant theft, robbery, two counts of murder in the first degree, and two counts of felony murder for the deaths of Berta and Delbert Herndon. Pizzuto received a fixed sentence of fourteen years for grand theft, a life sentence for robbery, and a sentence of death for the murders. *Pizzuto v. State*, 146 Idaho 720, 722, 202 P.3d 642, 645 (2008). Pizzuto filed a direct appeal, and this Court affirmed his convictions and sentences except for the robbery conviction, which was dismissed because this Court found it to be a lesser included offense of felony murder. *State v. Pizzuto*, 119 Idaho 742, 757–58, 810 P.2d 680, 695–

1

96 (1991). Pizzuto had simultaneously filed his first petition for post-conviction relief with the direct appeal; the court dismissed his petition, and this Court affirmed the dismissal. *Id.*

Pizzuto filed a second petition for post-conviction relief in 1994 wherein he asserted a number of claims that had not been included in his first petition. *Pizzuto v. State*, 127 Idaho 469, 903 P.2d 58 (1995). The district court denied the petition on the ground that Pizzuto failed to make a prima facie showing that the claims were not known or reasonably could not have been known when Pizzuto filed his first post-conviction petition, and consequently, the claims were barred under I.C. § 19-2719. *Id.* at 470, 903 P.2d at 69. This Court affirmed the district court's dismissal. *Id.* at 471–72, 903 P.2d at 60–61.

On April 13, 1998, Pizzuto filed an amended third petition for post-conviction relief requesting that Judge Reinhardt recuse himself due to his prejudice against the petitioner. Pizzuto also claimed that he was entitled to a new trial because the prosecution wrongfully withheld exculpatory evidence. *Pizzuto v. State*, 134 Idaho 793, 795–98, 10 P.3d 742, 744–748 (2000). Judge Reinhardt declined to recuse himself, and he summarily dismissed Pizzuto's petition under I.C. § 19-2719 finding that Pizzuto knew or reasonably could have known about the withheld information when he filed his first petition for post-conviction relief. *Id.* This Court affirmed the rulings of the district court. *Id.*

Pizzuto filed his fourth petition for post-conviction relief in 2002. In his petition, Pizzuto argued that under *Ring v. Arizona*, 536 U.S. 584, (2002), his sentence was illegal because a judge, instead of a jury, had made the factual findings upon which imposition of the death penalty was based. The district court dismissed Pizzuto's petition, and this Court affirmed the dismissal, holding that *Ring* did not apply retroactively.

On June 19, 2003, Pizzuto filed a fifth petition for post-conviction relief wherein he argued that under *Atkins v. Virginia*, 536 U.S. 304 (2002), it would be unconstitutional to execute him because he is mentally retarded. *Pizzuto*, 146 Idaho at 723, 202 P.3d at 645. Judge Reinhardt dismissed the petition on the grounds that he had failed to raise a genuine issue of material fact to support his claim of mental retardation and that the petition had not been filed within forty-two days after *Atkins* was released. *Id.* at 724–25, 202 P.3d at 645–46. Pizzuto had also filed a motion to disqualify Judge Reinhardt without cause under Idaho R. Civ. P. 40(d)(1) or, in the alternative, to disqualify him for cause because of his alleged bias against Pizzuto. *Id.* at 725, 202 P.3d at 646. Judge Reinhardt denied the motion, and on appeal, this Court affirmed

the decision. *Id.* at 724-28, 202 P.3d at 656–50. This Court held that Pizzuto was not required to file his petition for post-conviction relief within forty-two days of the publication of the opinion. *Id.* at 727, 202 P.3d at 649. This Court, however, affirmed the dismissal of Pizzuto's petition on the ground that the Eighth Amendment does not prohibit the imposition of the death penalty on a petitioner who alleges mental retardation unless an expert provided an opinion showing that the petitioner had an IQ of seventy or below at the time of the murders and prior to his eighteenth birthday. *Id.* at 728–734, 202 P.3d at 650–656.

On November 25, 2005, Pizzuto filed his sixth petition for post-conviction relief and filed an amended petition on May 4, 2006. In his amended petition, Pizzuto asserted several claims: (1) violation of his rights under the Fifth, Eighth, and Fourteenth Amendments because the prosecutor allegedly withheld exculpatory information; (2) prosecutorial misconduct in violation of his rights under the Sixth Amendment and *Brady v. Maryland*, 373 U.S. 83 (1963), for allegedly withholding exculpatory information; (3) judicial misconduct in violation of his right to a trial before an impartial judge; (4) denial of impartial post-conviction review; (5) cumulative error; and (6) actual innocence. On May 4, 2006, Pizzuto also filed a motion for leave to file additional affidavits and simultaneously filed a motion for leave to conduct discovery.

Four of Pizzuto's claims were dismissed by Judge Williamson on June 1, 2006, and the remaining issues were dismissed by Judge Owen on October 31, 2007. Judge Williamson, in her June 1, 2006, order, struck several affidavits Pizzuto sought to file with his petition. The district court, through a number of orders, also severely limited Pizzuto's ability to conduct discovery. Pizzuto filed a timely notice of appeal on December 12, 2007.

The majority of Pizzuto's claims in his petition revolve around an alleged secret plea deal between the prosecutor and James Rice, a co-defendant who eventually testified against Pizzuto at his trial. Pizzuto alleges that a meeting was held between Rice's attorney, the prosecutor, and Judge Reinhardt where the parties agreed Rice would plead guilty to two counts of second degree murder for his role in the deaths of Berta and Delbert Herndon. In exchange for his testimony against Pizzuto, Rice would receive a twenty year sentence, which with good time credits, would amount to fourteen years, eight months, and sixteen days behind bars. Pizzuto argues that the true nature of Rice's plea deal was not divulged in order to bolster his credibility while testifying at trial. Pizzuto has provided evidence in the form of a billing record, which states that Rice's attorney, on January 13, 1986, took part in "[s]erious consultations and

3

negotiations for plea-bargaining . . . with the prosecutor . . . ." Pizzuto has also provided a copy of notes from Rice's attorney stating that on January 16, 1986, Rice's attorney, the prosecutor, and Judge Reinhardt "discussed negotiations for Rice to enter a plea to reduced charges."

Pizzuto alleges that at Rice's plea hearing, Rice and his attorney, the prosecutor, and Judge Reinhardt took steps to conceal the nature of his plea agreement. Pizzuto argues that Judge Reinhardt asked Rice if he had been promised a lenient sentence in exchange for his guilty plea and Rice said that he had not. Pizzuto argues that Judge Reinhardt emphasized the fact that Rice could receive a fixed life sentence for each of the second degree murder counts. Moreover, Pizzuto argues that at trial, Rice appeared more credible because the prosecution elicited testimony from Rice that he was facing up to life in prison and that the prosecutor emphasized this point in his closing argument.

Pizzuto also claims that while the prosecutor and Judge Reinhardt were allegedly encouraging Rice to plead guilty, the blood evidence underwent a mysterious transformation. Pizzuto argues that on July 29, 1985, the police examined the cabin where the murders supposedly occurred and did not see traces of blood. On August 7, 1985, Don Philips, a state criminalist, and on October 24, 1985, Ned Stuart, another state criminalist, examined the cabin, and both did not see traces of blood. In January of 1986, Ann Bradley, Pizzuto's own criminalist, indicated that it would be difficult to conduct an examination of the cabin during the winter and suggested that the trial be postponed to allow for an inspection once the snow had thawed. In response to her request, during the week of January 6, 1986, Judge Reinhardt contacted Randy Baldwin, the Idaho County Sheriff, to have the cabin heated. Pizzuto emphasizes this was around the time Rice began recounting the story that both murders had occurred in the cabin. Pizzuto argues that without blood in the cabin, a jury would not have believed Rice's story. On January 13, 1986, after a second conversation with Judge Reinhardt, Sheriff Baldwin and Deputy Travis Breckon set up two large heaters in the cabin. The following day, criminalists Ann Bradley and Ned Stuart, when inspecting the cabin, both immediately observed blood. Pizzuto has provided several affidavits that among other things, cast doubt on the trustworthiness of Sheriff Baldwin.

Pizzuto argues the evidence of blood on articles of clothing also underwent a transformation. Ann Bradley testified that she found possible blood on three articles of clothing including a shirt allegedly owned by Pizzuto and a pair of jeans allegedly owned by Rice. She

4

did not find blood on a blue nylon jacket allegedly owned by Pizzuto. Pizzuto argues that Stuart, another criminalist, in his initial report, did not mention any test on the blue nylon windbreaker, but in his report a week later, one day before Rice pleaded guilty, Stuart claimed he found blood on the Pizzuto's windbreaker.

## ISSUES ON APPEAL

1. Whether Pizzuto's claims are barred by I.C. § 19-2719.

2. Whether this Court is precluded from considering the merits of Pizzuto's appeal because he did not comply with Idaho App. R. 35(a)(4).

3. Whether there is a genuine issue of material fact as to whether Judge Reinhardt was biased and committed acts of judicial misconduct.

4. Whether there is a genuine issue of material fact regarding Pizzuto's prosecutorial misconduct claim.

5. Whether there is a genuine issue of material fact regarding Pizzuto's actual innocence claim.

6. Whether Pizzuto has established a claim of cumulative error.

7. Whether Pizzuto is entitled to an evidentiary hearing.

8. Whether this Court should affirm the decision of the district court to strike affidavits.

## STANDARD OF REVIEW

"Petitions for post-conviction relief are civil proceedings governed by the Idaho Rules of Civil Procedure." *Storm v. State*, 112 Idaho 718, 720, 735 P.2d 1029, 1031 (1987). To prevail, a petitioner generally must prove by a preponderance of the evidence the allegations upon which the petition for relief is based. *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Idaho Ct. App.1990).

"Whether a successive petition for post-conviction relief was properly dismissed pursuant to I.C. § 19-2719 is a question of law," which this court reviews de novo. *Pizzuto*, 134 Idaho at 795, 10 P.3d at 744.

In *Charboneau v. State*, 140 Idaho 789, 793, 102 P.3d 1108, 1112 (2004) (quoting *Saykhamchone v. State*, 127 Idaho 319, 321, 900 P.2d 795, 797 (1995)), this Court reaffirmed the standard of review for post-conviction cases when determining whether summary dismissal was proper:

> In determining whether a motion for summary disposition is properly granted, a court must review the facts in a light most favorable to the petitioner, and determine whether they would entitle petitioner to relief if accepted as true. A court is required to accept the petitioner's unrebutted allegations as true, but need

not accept the petitioners [sic] conclusions. The standard to be applied to a trial court's determination that no material issue of fact exists is the same type of determination as in a summary judgment proceeding. (citations omitted throughout).

 "To justify a post-conviction evidentiary hearing, the petitioner must make a factual showing based on admissible evidence." *McKinney v. State*, 133 Idaho 695, 700, 992 P.2d 144, 149 (1999). The application must be supported by written statements from competent witnesses or other verifiable information. *Paradis v. State*, 110 Idaho 534, 536, 716 P.2d 1306, 1308 (1986) (citing *Drapeau v. State*, 103 Idaho 612, 617, 651 P.2d 546, 551 (Ct. App.1982)). Unsubstantiated and conclusory allegations are insufficient to entitle a petitioner to an evidentiary hearing. *King v. State*, 114 Idaho 442, 446, 757 P.2d 705, 709 (Ct. App.1988).

## ANALYSIS

**I.    This Court finds that Pizzuto's claims are barred under I.C. § 19-2719.**

Pizzuto asserted six claims in his amended petition for post-conviction relief: (1) withholding exculpatory information; (2) prosecutorial misconduct; (3) judicial misconduct; (4) denial of an impartial post-conviction review; (5) cumulative error; and (6) actual innocence. These claims, however, are barred by I.C. § 19-2719. Pizzuto argues I.C. § 19-2719 is not controlling and that it is unconstitutional; yet, this Court is not be persuaded by these arguments.

Post-conviction proceedings are generally controlled by the Uniform Post-Conviction Procedure Act (UPCPA), I.C. §§ 19-4901 to -4911. *McKinney*, 133 Idaho at 700, 992 P.2d at 149. However, I.C. § 19-2719 governs capital cases to the extent they conflict with the UPCPA. *Id.* "Any remedy available by post-conviction procedure . . . must be pursued according to the procedures set forth in this section and within the time limitations of subsection (3) of this section." I.C. § 19-2719(4). Idaho Code § 19-2719(3) states that "[w]ithin forty-two . . . days of the filing of the judgment imposing the punishment of death, and before the death warrant is filed, the defendant must file any legal or factual challenge to the sentence or conviction that is known or reasonably should be known." If the party fails to apply for relief within forty-two days of the imposition of the death penalty, that party "shall be deemed to have waived such claims for relief as were known, or reasonably should have been known." I.C. § 19-2719(5). "The courts of Idaho shall have no power to consider any such claims . . . ." *Id.* Thus, "In capital cases, a successive petition is allowed only where the petitioner can demonstrate that the issues raised were not known or could not reasonably have been known within the forty-two day

time frame." *McKinney*, 133 Idaho at 701, 992 P.2d at 150 (citing *State v. Rhoades*, 120 Idaho 795, 807, 820 P.2d 665, 677 (1991)). This is where I.C. § 19-2719 differs from the UPCPA, which requires a waiver be knowing, voluntary, and intelligent. I.C. § 19-4908; *Id.*

Idaho Code § 19-2719 places a heightened burden on petitioners to make a prima facie showing that the issues raised after the forty-two day time period were not known or could not reasonably have been known. *McKinney*, 133 Idaho at 701, 992 P.2d at 150 (citing *Paz v. State*, 123 Idaho 758, 760, 852 P.2d 1355, 1357 (1993)). In addition to the prima facie showing, the claims must be raised "within a reasonable time" after they become known or reasonably could have become known. *Id.* (citing *Paz*, 123 Idaho at 760, 852 P.2d at 1357). Any petition for post-conviction relief that fails to meet the above requirements must be summarily dismissed. I.C. § 19-2719(11); *Id.*

**A.      This Court finds that Pizzuto's claims are barred by I.C. § 19-2719.**

**i.      The claim of prosecutorial misconduct is barred under I.C. § 19-2719.**

The district court dismissed Pizzuto's claim of prosecutorial misconduct because it found the evidence, when taken in the light most favorable to Pizzuto, did not cast doubt on the reliability of his conviction.

The State argues Pizzuto has failed to make a prima facie showing that his prosecutorial misconduct claim is not barred under I.C. § 19-2719. Specifically, the State argues Pizzuto has failed to show that his claim was not known and reasonably could not have been known when he filed his first petition for post-conviction relief, as required in this instance under I.C. § 19-2719(5).

Pizzuto claims that the prosecutor suppressed facts regarding the nature of Rice's plea deal and knowingly introduced false blood evidence. The two allegations will be discussed separately.

**a.      The alleged secret plea agreement**

Pizzuto relies upon four pieces of evidence to show the existence of the alleged secret plea agreement: an affidavit from Rice; an affidavit from Rice's ex-wife, Joy Tara; and notes and billing records from Rice's counsel. In addition, Pizzuto argues that his petition was timely filed. Pizzuto argues that "it was only shortly before filing of the petition that Rice finally admitted that he testified against [Pizzuto] in exchange for promises not revealed to [Pizzuto], specifically, an

7

agreed upon sentence of twenty years in which he was assured by the state that he would serve significantly fewer years."

Nonetheless, the State argues that Pizzuto has failed to demonstrate why his claims could not have been presented in his first petition for post-conviction relief. In Rice's affidavit, signed September 28, 2005, where he divulges facts regarding his alleged secret plea deal, Rice describes why he did not come forth at an earlier date. In his affidavit, Rice wrote:

> I was contacted once in the past by an investigator for the Capital Habeas Unit of the Federal Defenders of the Eastern District of Washington and Idaho while I was serving my prison sentence on the Second Degree murder conviction out of Idaho. I did not tell the investigator about my deal because I did not want to jeopardize my parole. After I was released from prison, I did not seek to tell anyone about the deal because I might need the Idaho authorities to vouch for me one day. In fact, I was charged in a criminal case in California and my attorney did ask the prosecutor, Henry Boomer, to help me with my case. Now, I am in prison for life because I was a three strike defendant, and I have nothing to lose by coming forward with the truth. I also don't think Gerald Pizzuto should die because he was put up to the crime by Bill Odom.

The State argues Rice wrote on his affidavit next to the above paragraph, "Excluding," and as a result, the paragraph has been recanted by Rice. In a separate affidavit, Rice explained why he wrote "Excluding" next to the paragraph. The State argues, however, that Rice's explanation is too vague and that he never expressly stated he had previously been asked about his plea deal and refused to answer the question or deliberately lied. In his second affidavit, signed May 10, 2006, Rice stated:

> I wrote the word "Excluding" because I thought the sentence that reads, "After I was released from prison, I did not seek to tell anyone about the deal because I might need the Idaho authorities to vouch for me one day" made it sound like I was planning to commit more crimes after I was released when I was not. I didn't remember the sentence sounding like that when I reviewed it with Mrs. Bentley.

> Thinking about it now, another reason may have been that I was not sure that the second sentence in that paragraph was correct. The sentence is: "I did not tell the investigator about my deal because I did not want to jeopardize my parole." I am not sure if I was concerned about my parole when I spoke with the previous investigator from the Federal Defender's office as it may have been after my parole issues were settled. I can't remember.

> Other than what I have explained, the affidavits and declarations I have signed for Mrs. Bentley are true and correct to the best of my knowledge.

8

The State argues, moreover, it is clear that an investigation regarding Rice's alleged plea agreement was not commenced until years after Pizzuto's first post-conviction petition was filed. The State argues, therefore, "[E]ven if Rice had been more forthcoming, Pizzuto would not have raised the claim in his first petition because he failed to even question Rice until December 2, 1997."

Pizzuto also relied upon an affidavit from Rice's wife, Joy Tara, to support his claim that Rice and the prosecutor entered into a secret plea agreement. Tara's affidavit, signed October 14, 2005, states that Rice knew he was going to receive a sentence of twenty years in exchange for his testimony against Pizzuto. Tara's affidavit also explains why she did not come forward sooner:

> After Jim was sentenced, I moved back to Santa Cruz and tried to disappear. I was petrified of Jim and afraid he would blame me for making him call the police and confess. I have been hiding from him. I am willing to cooperate with his investigation because I have learned that he is back in prison.

The State argues that though Tara says she was hiding from Rice, she attended his sentencing hearing, and he was in jail for at least fourteen years, negating the need to hide.

Pizzuto also relies upon notes and billing records to show that a meeting took place between Rice's attorney, the prosecutor, and Judge Reinhardt. Yet, the State argues that there is nothing to suggest the billing record and notes were not available when Pizzuto filed his first petition for post-conviction relief.

This Court finds Pizzuto has failed to make a prima facie showing that his claims were not known or could not reasonably have been known when Pizzuto filed his first petition for post-conviction relief. I.C. § 19-2719(5); *McKinney*, 133 Idaho at 701, 992 P.2d at 150. First, the paragraph in the affidavit dated September 28, 2005, in which Rice explains why he did not divulge the secret plea agreement at an earlier date is inadmissible, as he disavowed it by writing the word "Excluding" next to the paragraph. Though Rice sought to clarify why he made such a notation, the State properly argued that Rice never stated he had previously been asked about the plea agreement and either lied or declined to answer. Second, Tara stated she tried to disappear for a number of years out of fear for Rice. However, Tara also wrote:

> Jim's lawyers also arranged for me to have a phone call with Jim, and a visit with Jim while I was in Idaho. They said I should go see Jim because it would help Jim to have a visit. When I talked to Jim, he told me "don't say anything, you don't know anything, I never told you anything." Nonetheless, I would have told anyone what Jim told me about the crimes but no one ever asked.

9

Jim's attorneys didn't ask me. No other attorneys or police officers or investigators questioned me about that until now.

Thus, though Tara states she was in hiding, she admitted to being ready and willing to reveal what Rice had told her. Lastly, Pizzuto has not shown that he could not have obtained possession of the notes and billing records from Rice's attorneys at an earlier date.

### b. The blood evidence

Pizzuto claims the prosecutor knowingly introduced "false evidence regarding blood found in the cabin where the murders supposedly occurred, [sic] and false evidence regarding blood found on what it asserted were petitioner's clothes."

The State argues Pizzuto has failed to show why the evidence could not have been discovered prior to his first petition for post-conviction relief. Pizzuto has not directly addressed the State's argument.

Pizzuto's claim is barred under I.C. § 19-2719. *McKinney*, 133 Idaho at 701, 992 P.2d at 150. Pizzuto introduced a number of affidavits in an attempt to cast doubt on the credibility of officials that worked in close proximity to the scene of the crime. Pizzuto, however, has not demonstrated that he did not know or could not reasonably have known about the claim prior to filing his first post-conviction petition.

### ii. The claim of judicial misconduct is barred under I.C. § 19-2719.

Pizzuto claims that Judge Reinhardt committed judicial misconduct by taking part in and concealing the true nature of Rice's plea deal; by engaging in ex parte contact with jurors prior to the sentencing phase of the trial where he discussed Pizzuto's guilt and criminal history; and by making statements prior to the sentencing phase of the trial that showed he was biased against Pizzuto. Angellina Rawson, Pizzuto's estranged sister, provided an affidavit dated November 9, 2005, in which she wrote that while at dinner with Judge Reinhardt, he said he was going to "hang" Pizzuto. The district court, however, dismissed Pizzuto's claim because the court found he had failed to make a prima facie showing under I.C. § 19-2719. This Court affirms the finding of the district court. I.C. § 19-2719(5); *McKinney*, 133 Idaho at 701, 992 P.2d at 150.

The State argues Pizzuto has failed to show that the participation of Judge Reinhardt in Rice's alleged secret deal was not known or could not reasonably have been known when he filed his first petition. Pizzuto has failed to address this claim.

The State also argues that irrespective of what Rawson's affidavit says, Pizzuto was aware or could have been aware of the claim at an earlier date because he had previously claimed

10

that Judge Reinhardt made similar statements to three of Pizzuto's other family members, Gerald Pizzuto, Sr., Pizzuto's father; Pamela Pizzuto, Pizzuto's mother; and Tony King, Pizzuto's sister. Pizzuto has failed to directly address this claim.

In her affidavit, Rawson provided an explanation as to why she did not come forward at an earlier date:

> I have not come forward until now for many reasons. After the trial, I tried to disappear. I didn't want to be found. I moved around a lot, from California, where I informed on a drug dealer in exchange for drug charges being dropped against me, to Kodiak Island, Alaska, to Tacoma, Washington. I continued to be a drug addict and alcoholic. I was depressed and suicidal. I had to deal with serious illness and disease. I suffered through a rape and serious beating. About four years ago, I moved to Juneau, Alaska and decided to straighten my life out. I am now under the care of doctors and counselors, and have an in-home caretaker. I am only now at a place where I can talk about this[.]

Nevertheless, this statement is insufficient to make a prima facie showing under I.C. § 19-2719(5). "A successive post-conviction pleading asserting the exception shall be deemed facially insufficient to the extent it alleges matters that are cumulative or impeaching . . . ." I.C. § 19-2719(5)(b). In his first petition for post-conviction relief, Pizzuto claimed that Judge Reinhardt was prejudiced against him and should have disqualified himself from the case. *Pizzuto*, 134 Idaho at 799, 10 P.3d at 748. The motion was accompanied by affidavits from Pizzuto's mother, father, and sister, who testified that Judge Reinhardt had told them that Pizzuto was a "murderer," "scum," and that "they were going to hang" Pizzuto. *Id.* Pizzuto, thus, has failed to make out a prima facie showing under I.C. § 19-2719.

Pizzuto also claims that Judge Reinhardt committed judicial misconduct by engaging in ex parte contact with jurors prior to the sentencing phase of the trial where he discussed Pizzuto's guilt and criminal history. Pizzuto provided an affidavit of a juror, Wilburn Braddick, dated September 21, 2005, wherein Braddick states that after the verdict was read, one of the jurors was very upset. In order to calm the juror, Braddick states Judge Reinhardt, prior to the sentencing hearing, came over to the hotel where the jurors were staying and showed some jurors Pizzuto's criminal record. The affidavit states Judge Reinhardt said "something like, 'There's no innocence here.'" Yet, Pizzuto has failed to make a prima facie showing under I.C. § 19-2719 that such information was not known or could not reasonably have been known at the time of his

first post-conviction petition. Neither Braddick's affidavit nor the affidavits from the other jurors include a statement expressing an unwillingness to come forth at an earlier date.

### iii. The claim of actual innocence is barred under I.C. § 19-2719.

Pizzuto has premised his actual innocence claim on three alleged facts: (1) Rice received a secret plea deal that was not divulged to the jury; (2) the jury was never made aware of the fact that William Odom, the only other direct witness against Pizzuto, had worked as a paid informant; and (3) the State knowingly produced false evidence about the presence of blood in the cabin where the murders supposedly occurred.

Pizzuto has failed to establish that he did not know or reasonably could not have known Odom had acted as a paid informant. I.C. § 19-2719. Additionally, this Court, above, found that Pizzuto failed to establish a prima facie case under I.C. § 19-2719 for the remaining allegations on which this claim is based.

### iv. The claim of cumulative error is barred under I.C. § 19-2719.

Pizzuto asserted a claim of cumulative error in his petition. Nonetheless, because Pizzuto failed to establish a prima facie case under I.C. § 19-2719 for any of the above claims, Pizzuto's cumulative error claim also fails under I.C. § 19-2719.

### B. This Court holds that I.C. § 19-2719 is controlling.

Pizzuto argues that I.C. § 19-2719 should not control these proceedings because it will work an egregious injustice and is not the law in the State of Idaho. Pizzuto argues that "this Court has recognized its jurisdiction to consider claims notwithstanding Idaho Code Section 19-2719." Pizzuto argues that in *Sivak v. State*, 134 Idaho 641, 647, 8 P.3d 636, 642 (2000), this Court rejected the argument of the State that a petitioner should be precluded from raising an old claim.

The State argues this Court has never stated that it would consider claims notwithstanding I.C. § 19-2719. *Sivak*, the State argues, "merely stands for the proposition that a defendant can resurrect an old claim with newly discovered evidence if that evidence was not known and could not reasonably have been known when the first post-conviction petition was filed."

The State has properly interpreted *Sivak*. In *Sivak*, the State argued that the petitioner had waived a specific "'claim of relief' under I.C. § 19-2719(5) because the claim was advanced in a previous post-conviction proceeding." *Id.* Nevertheless, this Court held that a petitioner can

raise an old claim with newly discovered evidence, which is in line with I.C. § 19-2719(5). Specifically, this Court stated:

> We reject the State's theory that Sivak has waived this claim for relief merely because he raised the issue in his first post-conviction petition. As Sivak concedes, this petition presents not a new claim but new evidence supporting an old claim. Applying this rule as the State requests would result in Idaho courts being unable to entertain evidence of actual innocence in successive post-conviction petitions, even where the evidence was clearly material or had been suppressed by prosecutorial misconduct. We must be vigilant against imposing a rule of law that will work injustice in the name of judicial efficiency.

*Id.* Thus, Pizzuto has mischaracterized the holding in *Sivak* and has not provided adequate justification as to why I.C. § 19-2719 is inapplicable to this case.

**C.      This Court holds that I.C. § 19-2719 is constitutional.**

Pizzuto argues that I.C. § 19-2719 is unconstitutional for three reasons: (1) it violates a petitioner's due process and equal protection rights; (2) it is unconstitutionally vague; and (3) it violates the separation of powers doctrine.

**i.      Due Process Clause and Equal Protection Clause**

Pizzuto argues that I.C. § 19-2719 is unconstitutional because it violates the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments of the United States and Idaho Constitutions. Pizzuto argues that the statute is unconstitutional because it treats capital defendants differently and unequally in comparison to non-capital defendants. "To apply this law only to capital defendants caught in the failed experiment of the legislative attempt to 'rush to judgment,'" Pizzuto argues, "is the ultimate violation of the principles of the equal protection and due process."

The State argues this Court has found in a number of cases that I.C. § 19-2719 does not violate the Equal Protection and Due Process Clauses, and that Pizzuto has failed to explain why they are not controlling.

This issue has been settled; I.C. § 19-2719 does not violate the Equal Protection Clause, *State v. Beam*, 115 Idaho 208, 213, 766 P.2d 678, 683 (1989), and it does not violate the Due Process Clause. *Rhoades*, 120 Idaho at 806, 820 P.2d at 676.

**ii.      Vagueness**

Pizzuto argues that inconsistent standards within I.C. § 19-2719(5) make it unconstitutionally vague. "[T]he statute imposes an internally inconsistent standard of 'know' or 'should reasonably have known,' in subsection (5) versus a standard of reasonably 'could' have

13

known in subsection (5)(a)," Pizzuto argues. However, as argued by the State, this Court settled the issue in *Hairston*, 144 Idaho at 56–57, 156 P.3d at 557–58, wherein it held that I.C. § 19-2719 is not unconstitutionally vague.

### iii. Separation of powers doctrine

Pizzuto argues this Court in *Paz*, 123 Idaho at 758–60, 852 P.2d at 1355–57, "grafted" a requirement onto I.C. § 19-2719 that newly discovered claims must be filed within a "reasonable time;" Pizzuto argues that the additional limitation violates the Separation of Powers Doctrine. This Court, however, does not need to consider this issue because none of Pizzuto's claims were barred under the "reasonable time" requirement.

The remaining issues need not be considered on appeal because Pizzuto's claims are barred under I.C. § 19-2719.

## CONCLUSION

This Court affirms the holding of the district court that each of Pizzuto's claims is barred under I.C. § 19-2719. The remaining issues need not be considered on appeal.

Chief Justice EISMANN, Justices BURDICK, HORTON, and Justice *pro tem* TROUT, **CONCUR.**