# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 40010

| | | |
|---|---|---|
| DEAN ALLEN HARRELL, | ) | 2014 Unpublished Opinion No. 303 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: January 3, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael R. Crabtree, District Judge.

Judgment summarily dismissing amended second successive petition for post-conviction relief, affirmed.

Deborah Whipple of Nevin, Benjamin, McKay & Bartlett LLP, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Chief Judge

Dean Allen Harrell appeals from the judgment of the district court summarily dismissing Harrell's amended second successive petition for post-conviction relief seeking DNA testing. Because the DNA test results would not show that it is more probable than not that Harrell is innocent of the victim's rape, we affirm.

## I.

## FACTS AND PROCEDURE

Underlying this post-conviction relief action is Harrell's rape conviction. The facts, as previously set forth by this Court, are as follows:

> On July 30, 1998, a Cassia County sheriff's officer was dispatched to the residence of S.K. Upon entering the residence, the officer observed that S.K.'s eyes were black and swollen, that her lips were puffy, that she had blood on her arms and hands, that there was blood on the floor, bed, and walls, and that a number of items in the residence were broken. S.K. told the officer that she had

1

been beaten and raped. Based upon information collected by the police, Harrell was arrested on July 31, 1998, and charged with rape, I.C. § 18-6101(4), and burglary, I.C. § 18-1401. Harrell entered a plea of not guilty and a trial was scheduled.

. . . .

A friend of the victim testified at trial that she, Harrell, and a number of other people arrived at the victim's home at approximately 1:30 a.m. on the morning of July 30, 1998. She testified that Harrell had been wearing a tank top, faded blue Wrangler jeans, scruffy cowboy boots, and a green ball cap. Finally, the friend testified that Harrell remained at the victim's home after she and most of the other people left at approximately 3:00 a.m.

Another friend of the victim testified at trial that she returned to the victim's home and knocked on the front door. She testified that a man walked out, shut and locked the door behind him, and said that the victim was asleep. Although she did not notice the man's face, the friend testified that she knew the man was Harrell because he was wearing the same clothing that she saw him wearing earlier that night. She further testified that Harrell ran very quickly to his truck and sped off without turning on his headlights. Finally, the friend testified that she continued to knock and that when the victim answered the door, she was "bare naked, bloody and beat" and was yelling that she had just been raped.

One of the officers testified at trial that he first confronted Harrell in the parking lot of a local cafe on the following day. Harrell agreed to talk to the police and led them back to his residence where Harrell agreed to let the officers look around. The officer observed that Harrell was wearing a pair of blue Wrangler jeans which appeared to be stained with blood. In Harrell's residence, the officer discovered a pair of laced-up leather boots and a light-colored tank top which also appeared to be stained with blood. Harrell admitted that he had been wearing the pants, the lace-up boots, and the tank top on the previous night. The officer asked if he could take Harrell's pants for testing, and Harrell agreed. When Harrell removed his pants, the officer discovered that Harrell's underwear was also stained with blood. Harrell admitted that he had worn the underwear on the previous night. Harrell voluntarily gave his underwear to the officer.

A sample of the blood found on Harrell's underwear was DNA tested by the Idaho Department of Law Enforcement. A criminalist from the department testified at trial that the results of the DNA test excluded Harrell as a source of the blood. The criminalist testified that the results showed, however, that the victim was a potential source of the blood.

The officer also testified that Harrell agreed to meet the officers at their office for further questioning. The officer observed that there were numerous "fresh" scrapes and cuts on Harrell's hands, which the officer believed were the result of hitting somebody in the teeth. During the interview, Harrell admitted to having sex with the victim and stated that "everything was going good and then it turned to shit." Harrell also stated that he didn't know how things got out of hand, that he didn't realize that he hit her that hard, and that he hated going to jail for something he didn't mean to do. Following the interview, Harrell completed a written statement in which he stated, "Everything was going good, and the next

2

minute, everything got out of hand, and she started telling me she didn't want to. She wanted to go to bed, and that is when it got out of control."

*State v. Harrell*, Docket No. 25985 (Ct. App. July 25, 2001) (unpublished).

The jury found Harrell guilty of rape and acquitted him on a burglary charge. The district court imposed a unified life sentence, with twenty-five years determinate. In *State v. Harrell*, Docket No. 25985 (Ct. App. July 25, 2001) (unpublished), we affirmed Harrell's judgment of conviction and sentence. In *Harrell v. State*, Docket No. 28371 (Ct. App. May 14, 2004) (unpublished), we affirmed the district court's order denying Harrell's initial petition for post-conviction relief. In *Harrell v. State*, Docket No. 33273 (Ct. App. Mar. 19, 2008) (unpublished), we vacated the dismissal of Harrell's successive petition for post-conviction relief and remanded the case. In *Harrell v. State*, Docket No. 36559 (Ct. App. Sept. 9, 2010) (unpublished), we affirmed the district court's summary dismissal, on remand, of Harrell's successive petition for post-conviction relief.

Harrell then filed a second successive petition for post-conviction relief and subsequently filed an amended second successive petition for post-conviction relief requesting DNA testing on his underwear.[1] The State filed a motion to dismiss, and Harrell filed a motion for DNA testing. The court held a hearing, and afterwards, Harrell filed a memorandum in support of his motion and in opposition to the State's motion to dismiss. The State filed a reply. The court then issued a memorandum decision summarily dismissing Harrell's amended second successive petition for post-conviction relief. Harrell appeals.

## II.

## ANALYSIS

Harrell contends the district court erred by denying DNA testing of the blood stain on his underwear and summarily dismissing his amended second successive petition for post-conviction relief. Under Idaho Code § 19-4902, a petitioner may file a petition seeking DNA testing on evidence that was secured in relation to the trial that resulted in his conviction if the evidence was not subjected to the requested DNA testing because the technology was not available at the time of the trial. I.C. § 19-4902(b). The petitioner must present a prima facie claim that identity

---

[1] The district court noted that Harrell had not stated which items should be subjected to DNA testing, but the court assumed Harrell was only requesting DNA testing of his underwear. Harrell's briefing before this Court references his underwear.

was at issue in the trial and that the evidence was subject to a sufficient chain of custody. I.C. § 19-4902(c). The district court must then allow the testing under reasonable conditions after the district court determines that: "(1) The result of the testing has the scientific potential to produce new, noncumulative evidence that would show that it is more probable than not that the petitioner is innocent; and (2) The testing method requested would likely produce admissible results under the Idaho rules of evidence." I.C. § 19-4902(e).

Harrell argues a DNA test would show it is more probable than not that Harrell is innocent of the victim's rape. Harrell also asserts his confession was false. The State maintains that a DNA test would not show it is more probable than not that Harrell is innocent of the victim's rape. The State also contends Harrell should have raised the issue regarding the confession on direct appeal.[2] In the district court's memorandum decision summarily dismissing Harrell's amended second successive petition, the district court recalled the evidence presented at the rape trial. The district court determined that, even if evidence proved the victim was not the source of the blood on the underwear, the results would not provide evidence of a different perpetrator. The district court also determined that, in light of the other evidence, the results of a DNA test would not show that it is more probable than not that Harrell is innocent of the victim's rape.

When there is a motion for summary dismissal of a petition for post-conviction relief, the court must review the facts in a light most favorable to the petitioner. *Pizzuto v. State*, 149 Idaho 155, 160, 233 P.3d 86, 91 (2010). However, to prevent summary dismissal the petitioner must present evidence establishing a prima facie case as to each element of the claims upon which the petitioner bears the burden of proof. *Pizzuto v. State*, 146 Idaho 720, 728, 202 P.3d 642, 650 (2008). A mere scintilla of evidence is not sufficient to create a genuine issue of material fact precluding summary dismissal. *Id.* at 733, 202 P.3d at 655. "The application must be supported by written statements from competent witnesses or other verifiable information. Unsubstantiated and conclusory allegations are insufficient to entitle a petitioner to an evidentiary hearing." *Pizzuto*, 149 Idaho at 160, 233 P.3d at 91 (citations omitted).

---

[2]     The State further asserts the district court was not required to assume that DNA testing would be favorable to Harrell in granting summary dismissal. We need not address this argument, offering an alternative basis for affirming the district court's decision, as we are persuaded that a DNA test would not show it is more probable than not that Harrell is innocent of the victim's rape.

We are not persuaded by Harrell's argument that the lack of the victim's blood on his underwear would "greatly affect the analysis of the other surrounding circumstances and evidence" and show that Harrell was not the rapist. The results of a DNA test would not refute the testimony of the victim's friends and would not refute the confession given by Harrell. Harrell's contention that his confession was false should have been raised on direct appeal. The scope of post-conviction relief is limited. *Knutsen v. State*, 144 Idaho 433, 438, 163 P.3d 222, 227 (Ct. App. 2007). A petition for post-conviction relief is not a substitute for an appeal. I.C. § 19-4901(b). A claim or issue that was or could have been raised on appeal may not be considered in post-conviction proceedings. *Id.*; *Mendiola v. State*, 150 Idaho 345, 348-49, 247 P.3d 210, 213-14 (Ct. App. 2010).

We conclude that the district court did not err by denying DNA testing of the blood stain and summarily dismissing the amended successive petition for post-conviction relief. The results of a DNA test would not show that it is more probable than not that Harrell is innocent of the victim's rape. The district court correctly determined that the State was entitled to judgment as a matter of law. Accordingly, the district court's judgment summarily dismissing Harrell's amended second successive petition for post-conviction relief is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**